473 F.2d 1258
 82 L.R.R.M. (BNA) 2679, 70 Lab.Cas. P 13,438
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
INDUSTRIAL TOWEL AND UNIFORM SERVICE, a Division of Cavalier
Industries, Inc., and Teamsters, Chauffeurs, Helpers and
Taxicab Drivers Local No. 327, Affiliated with International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Respondents.
 No. 72-1534.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 15, 1972.
Decided Feb. 23, 1973.
 
 Russell H. Gardner, Washington, D. C., for petitioner; Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert E. Williams, Washington, D. C., John J. A. Reynolds, Jr., Director, Region 26, N.L.R.B., Memphis, Tenn., on brief.
 Charles Hampton White, Cecil D. Branstetter, Nashville, Tenn., for respondents; William Lamar Newport, Carrol D. Kilgore, Nashville, Tenn., on brief.
 Before PECK and LIVELY, Circuit Judges, and MORTON,* District Judge.
 PER CURIAM:
 
 
 1
 This case is before the Court upon application of the National Labor Relations Board for enforcement of its order against the respondent company (Industrial Towel and Uniform Service), and the respondent union (Teamsters, Chauffeurs, Helpers and Taxicab Drivers Local No. 327). The facts are fully set forth in the reported decision of the Board, 195 NLRB No. 187, and need only be summarized here.
 
 
 2
 The charging party, Doris Durham, executed a dues checkoff authorization form when she first entered the company's employ in 1963 which authorized the company to deduct her union dues and initiation fee from her pay. The relevant language in this form provides that it shall be "irrevocable for the term of the applicable contract . . . or for one year, whichever is the lesser, and shall automatically renew itself for successive yearly or applicable contract periods thereafter . . ." unless the employee notified the company and the union at least 60 days before any periodic renewal date of his desire to revoke the authorization form. In 1966 she left the company because of illness requiring surgery. In 1969 she returned to work for the company at a new position commensurate with her reduced physical abilities. The company acknowledges that upon rehiring of Durham it relied upon the original dues checkoff authorization form and continued to deduct union dues and transmit them to the union without requiring the execution of a new dues checkoff authorization form. Durham protested these deductions, but the company continued to make the deductions until she left its employ for the second time in 1970. She then filed a charge against the company alleging that it was violating the Act by its deduction of union dues from her pay. Prior to the hearing, this complaint was amended several times to include charges that the company was unlawfully deducting union dues from as many as 32 employees.
 
 
 3
 At the hearing before the Trial Examiner, the General Counsel for the Board amended the complaint to include 12 other individuals from whose wages the company was alleged to have unlawfully deducted union dues. This class action aspect of this case is hereinafter discussed separately from the case of the charging party, Durham.
 
 
 4
 The Trial Examiner found that Durham, when she returned to work for the company, was not a new employee because she was not required to fill out a new application form, because she received a rate of pay greater than that normally offered new employees and because she was not charged the initiation fee customarily levied by the union on new members. Accordingly, he concluded that no unfair labor practice had occurred under the facts of this case.
 
 
 5
 The Board reversed the Trial Examiner's decision that Durham was not reemployed as a new employee and concluded that the company violated Section 8 (a)(1), (2) and (3) of the Act with respect to its deduction of union dues from Durham's pay and from the pay of all of the other 12 employees named in the amended complaint. The Board also found that the union had violated Section 8(b)(1)(A) and (2) of the Act by causing such deductions of dues.
 
 
 6
 The first issue presented is whether the Board's conclusion that the company violated the Act by deducting the dues from Durham's pay was based upon findings which are supported by substantial evidence on the record as a whole.
 
 
 7
 The authorization form, by its own terms, indicated that it is to be selfrenewing, and provides for a clearly stated revocation procedure which was never invoked in this case (whether continued enforcement of a checkoff authorization after a purported revocation constitutes an unfair labor practice is therefore not an issue before this Court. See N. L. R. B. v. Penn Cork & Closures, Inc., 376 F.2d 52, 55 (2nd Cir. 1967)). The unambiguous language of this contract is controlling since the parties are presumed to have known what they were signing. N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 606, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).
 
 
 8
 Secondly, the circumstances, as found by the Trial Examiner, surrounding the re-employment of Durham in 1969 indicated that neither the company nor the union treated her resumption of employment as an initial employment. In addition, we cannot say that the Board's finding that she had no reasonable expectancy of re-employment at that time is supported by substantial evidence. Durham did not testify as to any information imparted by her to the company at the time of her departure in 1966, nor to any information imparted to her as to the expected duration of her layoff. The fact that she was not charged an initiation fee by the union also indicates that the union regarded her as a member in good standing returning to work. The substantial evidence indicates that Durham was not hired in 1969 as a new employee. This was the finding of the Trial Examiner. In determining whether the Board's findings are based upon substantial evidence on the record as a whole, this Court may consider the fact that a trial examiner reached a result different from that reached by the Board. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 9
 Absent any evidence that the company continued to deduct dues after a valid revocation of the authorization, we cannot find that the company violated the Act. Since Durham did not sever her employment relationship and since no revocation of the checkoff authorization form was attempted, the authorization continued to be valid, and there was no unfair labor practice by the company in deducting the union dues from the pay of the charging party. It follows, of course, that no unfair labor practice was committed by the union.
 
 
 10
 Since we hold that there were no unfair labor practices in this case, we do not reach the remaining contentions advanced by the respondents, including contentions concerning the appropriateness of the remedy. Although our single holding above is also a sufficient basis for denying enforcement of the Board's order as it pertained to the 12 other individuals as specified in the amended complaint, the singular procedure utilized by the Board requires comment.
 
 
 11
 None of the 12 individuals testified at the hearing, and no evidence at all was introduced concerning the particular circumstances surrounding their leaving and re-employment with the company. At best, the Board could only assume that these circumstances were similar to those of Durham, although the record indicates that the lapsed time between the leaving and the re-employment of one such person was a mere 20 days. In addition, there is no record evidence that any of them ever protested to the company or to the union concerning the continuation of the checkoff upon their reemployment, or that a revocation of the terms was ever attempted. Nevertheauthorization in accordance with its less, the Board found that the company and the union had committed unfair labor practices with regard to the dues checkoff authorizations of these 12 individuals.
 
 
 12
 We fail to see how the Board could, in the total absence of relevant evidence, establish violations in these 12 instances and then petition this Court for enforcement of that decision, knowing that enforcement of NLRB orders will be granted only when the findings are based upon substantial evidence. The Board's assertion that the determination of the identity of these individuals and the amounts of reimbursement due them is best "left to subsequent compliance proceedings" is so obviously specious as to not require comment. Even if circumstances warranted a finding that violations of the Act occurred with regard to the circumstances surrounding the charging party, this Court could not enforce the Board's findings concerning these other individuals.
 
 
 13
 In Western Union Tel. Co. v. N. L. R. B., 113 F.2d 992 (2nd Cir. 1940), the Board insisted that a union was dominated by the company although the employees had agreed to a checkoff of union dues. The Court found that the Board must produce and prove the individual damage to each employee; in so holding, Judge Learned Hand observed:
 
 
 14
 "Nor will it do any good to assume -as we do arguendo-that under the guise of 'affirmative action' the Board may make itself the vicarious representative of each employee who may have in fact suffered pecuniary damage; the vice is that the act did not create a mass tort by which either a particular employee, or the Board for all, could dispense with the proof that the 'unfair labor practice' actually impinged upon the putative victims and caused them pecuniary damage." 113 F.2d at 997.
 
 
 15
 We similarly disapprove of the quasiclass-action aspect of this case.
 
 
 16
 For the reasons set forth above, and for those contained in the report of the Trial Examiner, enforcement of the Board's order is denied.
 
 
 
 *
 Honorable L. Clure Morton, United States District Judge for the Middle District of Tennessee sitting by designation