NATIONAL LABOR RELATIONS BOARD, Petitioner,

Illinois Bell Telephone Company, Intervenor,

v.

LOCAL 399, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.

No. 73–1293.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1974.

Decided April 17, 1974.

Elliott Moore, Acting Asst. Gen. Counsel and William R. Stewart, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Robert E. Fitzgerald, Jr., Edward W. Bergmann, Chicago, Ill., for respondent.

Gordon W. Winks, Chicago, Ill., for intervenor.

Before KILEY, Senior Circuit Judge, and CUMMINGS and SPRECHER, Circuit Judges.

PER CURIAM.

The Labor Board's enforcement petition presents the issue whether the Board properly found that the respondent Union[1] violated § 8(b)(2) and (1)(A) of the National Labor Relations Act[2] by threatening and attempting to cause the discharge of employee Galka for non-payment of Union dues upon his return to the bargaining unit from which he had earlier been transferred to a supervisory position. We hold the Board's order is supported by substantial evidence in the record as a whole, and grant enforcement.

In March, 1968, Robert Galka, an eight year employee of intervenor Illinois Bell Telephone Company (Bell) and member of respondent Union, was promoted from his position as communica-

1. Local 399, International Brotherhood of Electrical Workers, AFL–CIO.

2. 29 U.S.C. § 151 et seq.

tions maintenance man to a supervisory position as station installation foreman. He informed Union steward Maddox that since he "was in management and . . . wasn't in the Union any more," his dues should be discontinued. This was done, and contact with the Union terminated.

In February, 1969, Galka left his supervisory position and returned to the bargaining unit. Union steward Nalefski told Galka in April that he had some cards for him to sign "in order . . . to get . . . Union dues started again." Galka agreed, but no cards were presented.

Nothing further was done until June, 1970, when Maddox told Galka that he was "in trouble" because he owed "some back dues" since he was "automatically" reinstated to Union membership in February, 1969, when he rejoined the unit. Galka disagreed and refused to sign a payroll deduction card. On July 1 the Union wrote Bell that if Galka did not pay the back dues Bell should fire him. Galka told Maddox he would pay current, but not back, dues, and Maddox said Galka's "job was at stake." Bell agreed with Galka and refused to fire him then, and in September, upon a renewed request by the Union. In December Union attorney Fitzgerald wrote Galka implying that the Union would insist on Bell firing him. Galka then, at Bell's suggestion, paid back dues of $141.45 "under protest."

On March 23, 1971, Bell filed the instant charge. After a hearing, the Administrative Law Judge found that Galka returned to the bargaining unit as a "new employee" without any obligation to rejoin the Union; that there was no evidence that Galka had been retained in the Union on "honorary withdrawal" status while he was a foreman; and that the Union committed an unfair labor practice within the meaning of § 8(b)(1)(A) and (2) of the Act by attempting to have Bell fire Galka for failure to pay Union dues he was not obligated to pay. The Judge also found

Fitzgerald's letter violative of § 8(b)(1)(A). The Judge ordered the Union to repay Galka $141.45 plus interest and to inform Bell to disregard Galka's checkoff authorization until he executed a new one.

The Board adopted the Judge's findings and decision and accepted his recommended order. The enforcement proceeding before us followed.

The Union contends that Galka's status as a Bell employee continued while he was a foreman, and that that continuing status, coupled with the maintenance of membership clause in the collective bargaining agreement, obligated him to rejoin the Union and to pay the back dues upon his reentry into the bargaining unit. Furthermore, the Union contends that, pursuant to Article XXVI, §§ 3 and 4 of its constitution, during his term as foreman Galka was on "honorary withdrawal" status in the Union and was automatically reinstated to Union membership on return to the unit. Neither contention has merit.

The Board has decided in other cases that when an employee terminates his relationship with one employer and is subsequently rehired by that same employer, he is treated as a new employee for purposes of joining or not joining the Union, notwithstanding the presence of a valid maintenance of membership clause in the collective bargaining agreement. Idarado Mining Co., 77 NLRB 392 (1948); Yellow Cab Co., 148 NLRB 620 (1964).

The same is true of an employee transferred out of the bargaining unit who then returns to it. He "stands in the same shoes as one being hired by the . . . Company for the first time, who has never been a member of the . . . Union . . . ." Convair, 111 NLRB 1055, 1056 (1955). See also Kaiser Steel Corp., 125 NLRB 1039, 1041 (1959).

Galka became a "supervisor" within the meaning of § 2(11) of the Act when elevated to foreman. Section 2(3) specifically excludes "supervisors"

from the definition of "employees." Under the Board's policy as stated in the aforementioned cases, we think that when Galka became a foreman, his statutory status as an "employee" within the bargaining unit was terminated as it would have been if he had left Bell and gone to work elsewhere, and that when he rejoined the bargaining unit, he was not obligated to rejoin the Union.

NLRB v. Industrial Towel and Uniform Service, 473 F.2d 1258 (6th Cir. 1973), on which the Union relies, is inapposite. The employee therein executed a checkoff authorization that was self-renewing annually unless the employee took affirmative action. In 1966 the employee quit her work because of illness and did not return until 1969, at which time the employer reinstated the dues checkoff without independent authorization. Characterizing the situation as a "layoff," the court held that the employee was not a "new" employee and therefore the checkoff authorization remained valid. The Sixth Circuit did not "specifically" reject the theory of the Board in *Idarado, supra*, as the Union claims.

■ We think too that the Administrative Law Judge was justified in finding that Galka was not on "honorary withdrawal" status while he was a foreman. The Union's constitution provides for two methods of conferring this status on a member.[3] The first, requiring issuance of an "honorary withdrawal card" to the individual, is clearly inapplicable here since Galka never received such a card. The second method allows the member to "be shown as on honorary withdrawal without actual issuance of the card." This is the method the Union contends it utilized in this case.

■ However, the Judge did not err in finding that the second method was "permissive rather than automatic in application,"[4] and that the Union introduced no evidence to indicate that Galka was "shown on honorary withdrawal." The Board's determination on this point in no way impaired the Union's right under the proviso in § 8(b)(1)(A) "to prescribe its own rules with respect to the acquiring or retaining of membership . . . ."

■ Finally, although a contrary inference than that drawn by the Judge can be drawn from the "appropriate action" language of Fitzgerald's letter to Galka (that is, that Fitzgerald would take legal action on the alleged debt rather than seek to have Galka discharged), we think there is substantial evidence in the record as a whole to support the Judge's inference that Fitzgerald's letter threatened Galka's discharge and constituted an unfair labor practice.

For the reasons given, the Board's order will be enforced.

---

3. Article XXVI:

Sec. 3. Any member not desiring to maintain his standing, who retires from the trade or is unemployed, or in such other cases as may be decided by the L. U., may be issued an honorary withdrawal card provided dues are paid for the previous month or the current month if the application is made after the fifteenth of such month.

Upon returning to the trade, or again becoming employed, and having complied with this Article, he shall deposit his withdrawal card in the L. U. that issued it and continue membership by paying the current month dues. No new initiation fee is necessary, except that any (A) member shall pay the $2 fee as required in Article X.

Sec. 4. "B. A." members not employed under the jurisdiction of the Local Union, for at least a month can be shown as on honorary withdrawal without actual issuance of the card, unless the L. U. Bylaws provide otherwise. Officers of the L. U. are not entitled to withdrawal status without forfeiture of their office.

4. Since the member "can be shown as on honorary withdrawal," it follows that he need not be.