June H. LOFTIS, Respondent,

v.

LEGIONVILLE SCHOOL SAFETY
PATROL TRAINING CENTER,
INC., Relator,

and

Department of Economic Security,
Respondent.

No. 48056.

Supreme Court of Minnesota.

June 20, 1980.

Kressel & Cecere and John G. Kressel, Minneapolis, for relator.

June H. Loftis, pro se.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Peter C. Andrews, Asst. Atty. Gen., Frank W. Levin, Sp. Asst. Atty. Gen., and William G. Brown, St. Paul, for Dept. of Economic Security.

Bruce P. Grostephan and Roger A. Peterson, Minneapolis, amicus curiae on Petition for Rehearing.

TODD, Justice.

The Legionville School Safety Patrol Training Center, Inc., annually conducts a training program for school patrol officers during an 11-week period each summer. June Loftis was hired to work as a cook for the Legionville School Safety Patrol Center from June 6, 1976, until August 21, 1976. At the time she was hired, she knew that the employment was for only 11 weeks. Upon her termination, she filed for unemployment benefits, which were allowed by the Department of Economic Security and charged to the Legionville School. Upon appeal by the school, the department's decision was affirmed by the appeal tribunal and by the Commissioner of Economic Development. The employer then appealed to this court, contending that by accepting employment of a limited and definite duration an employee became disqualified from unemployment benefits under the so-called "constructive voluntary quit rule."

■ The Minnesota Legislature has declared as its policy that "unemployment reserves * * * be used for the benefit of persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1978). Thus, an eligible claimant will be paid unemployment compensation unless some disqualification is proved, *Adelsman v. Northwest Airlines, Inc.*, 267 Minn. 116, 125 N.W.2d 444 (1963), such as voluntarily discontinuing employment without good cause attributable to the employer. Minn.Stat. § 268.09, subd. 1(1) (1978).

■ At the time this cause of action arose, "voluntary" was not defined by statute.[1] Its dictionary meanings include "produced in or by an act of choice; performed, made, or given of one's own free will; * * done by design or intention; * * * not constrained, impelled, or influenced by another * * *." Webster's New Third Int'l Dictionary 2564 (1976). Over the years, however, we have judicially expanded the dictionary meaning of "voluntary" to disqualify otherwise eligible claimants under what has come to be called the "constructive voluntary quit rule." Thus, separations from employment have been labeled "voluntary" when they result from the operation of seniority systems based on collective bargaining agreements, *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958); *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390 (Minn. 1979), from vacation shutdowns, *Jackson v. Minneapolis-Honeywell Regulator Co.*, 234 Minn. 52, 47 N.W.2d 449 (1951); *Johnson v. LaGrange Shoe Corp.*, 244 Minn. 354, 70 N.W.2d 335 (1955), and from the operation of mandatory retirement systems pursuant either to a collective bargaining agreement, *Bergseth v. Zinsmaster Baking Co.*, 252 Minn. 63, 89 N.W.2d 172 (1958), or to a policy imposed unilaterally by the employer, *Stream v. Continental Machines, Inc.*, 261 Minn. 289, 111 N.W.2d 785 (1961).

Despite our tendency to expand the "constructive voluntary quit rule," by the time this case reached us on appeal, only *Anson* and *Stawikowski* had not been overruled by legislative action,[2] and they too had fallen by the 1980 legislative session.[3] This legislative response to our past decisions, our recognition of the rule's inequities,[4] and our

---

1. This is still the case. In its 1980 session, however, the legislature amended Minn.Stat. § 268.09, subd. 1(1) (1979), to exclude from the definition of "voluntary leave" "a separation from employment by reason of its temporary nature or for inability to pass a test or for inability to meet performance standards necessary for continuation of employment * * *." 1980 Minn.Laws, ch. 508, § 9, amending Minn. Stat. § 268.09, subd. 1(1) (1979 Supp.). This amendment is a further extension of the changes made in the 1979 legislative session which excluded from disqualification for benefits those persons who were "separated from employment due to the completion of an apprenticeship program, or segment thereof, * * *." 1979 Minn.Laws, ch. 181, § 11, codified at Minn.Stat. § 268.09, subd. 1(2)(f) (1979 Supp.). The effect of these amendments is to overrule legislatively the holdings of *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958), and *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390 (1979). *See* note 3 *infra*.

2. *Jackson v. Minneapolis-Honeywell Regulator Co.*, 234 Minn. 52, 47 N.W.2d 449 (1951), and *Johnson v. LaGrange Shoe Corp.*, 244 Minn. 354, 70 N.W.2d 335 (1955), were overruled by 1975 Minn.Laws, ch. 336, § 3, amending Minn. Stat. § 268.04, subd. 23 (1978), and *Bergseth v.*

*Zinsmaster Baking Co.*, 252 Minn. 63, 89 N.W.2d 172 (1958), and *Stream v. Continental Machines, Inc.*, 261 Minn. 289, 111 N.W.2d 785 (1961), were overruled by 1977 Minn.Laws, ch. 242, § 1, amending Minn.Stat. § 268.09, subd. 1(2) (1978).

3. The 1979 legislature overruled *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390 (Minn.1979), 1979 Minn.Laws, ch. 181, § 11, amending Minn.Stat. § 268.09, subd. 1(2) (1978), and *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958), was overruled by 1980 Minn.Laws, ch. 508, § 9, amending Minn.Stat. § 268.09, subd. 1 (1979 Supp.).

4. As we noted in *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390, 394 (Minn.1979):

The department [of Economic Security] urges that our prior decisions be reversed, that the constructive voluntary termination rule be repudiated, and that the test for voluntariness enunciated in [*Campbell Soup Co. v. Board of Review*, 13 N.J. 431, 100 A.2d 287 (1953)] be adopted. We fully agree that the underlying purpose and objective of our unemployment compensation statute would be better served by applying the test advocated by claimants and the department, provided a

belief that disqualifying a person for having worked at a temporary position is contrary to the policies of the statute [5] all convince us that the "constructive voluntary quit rule" should not be extended to cover the facts of this case. Since the Commissioner of Economic Security has never applied this rule to temporary or seasonal employees,[6] our decision is consistent with the deference we give to the practical construction placed on a statute by those administrative officers charged with its enforcement. *Christgau v. Woodlawn Cemetery Ass'n*, 208 Minn. 263, 293 N.W. 619 (1940).

Although we agree with the commissioner that June Loftis is unemployed through no fault of her own and is thus entitled to receipt of unemployment compensation, we are unable to determine whether the experience ratio of the employer may be charged with such payments. Since this depends on fault attributable to the employer, Minn.Stat. § 268.06 (1978), we remand the matter for the taking of additional evidence on this issue.

Affirmed in part and remanded in part.

---

method to relieve employers of the unwarranted financial consequences without imperiling the unemployment reserve funds were available. Although such a test would surely be easier to administer, * * * we believe such changes must be instituted by the legislature.
See also *Hanson v. I. D. S. Properties Management Co.*, 308 Minn. 422, 425, 242 N.W.2d 833, 835 (1976).

5. The statutory scheme requires a person actively to seek employment. Minn.Sat. § 268.08, subd. 1(3) (1978). Yet, one who accepted employment of a limited duration in an attempt to comply with this statutory provision would later be disqualified from receiving unemployment compensation because deemed to have voluntarily discontinued employment when the temporary job came to an end. Minn.Stat. § 268.09, subd. 1 (1978). Disqualifying a person for working at a temporary position is inherently contrary to the policies of the statute. Minn.Stat. § 268.08 (1978). Furthermore, it would require us to claim that a person was at fault by accepting temporary employment, a conclusion we were unwilling to reach in *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390, 393 (Minn.1979).

6. Unfortunately, this longstanding administrative practice was not brought to our attention until the petition for rehearing was filed. During the more than 40 years in which the statute has been in force, no one had thought to challenge this practice. According to the department, reversal of its previously unchallenged practice would, in the period ending June 30, 1979, affect 42,100 claims, or 30 percent of the total filed.