John R. JANSEN, Relator,

v.

PEOPLES ELECTRIC COMPANY, INC., Respondent,

Commissioner of Economic Security, Respondent.

No. 81–574.

Supreme Court of Minnesota.

April 9, 1982.

James C. Noonan, St. Paul, for relator.

Felhaber, Larson, Fenlon & Vogt and James M. Dawson, Minneapolis, for Peoples Elec. Co., Inc.

Warren Spannaus, Atty. Gen., Joan Volz, Sp. Asst. Atty. Gen., and Peter C. Andrews, St. Paul, for Minnesota Dept. of Economic Security.

SIMONETT, Justice.

An employee who was bumped from his job by reason of the seniority provision in his collective bargaining agreement seeks review of a denial of unemployment compensation benefits. Finding that the legislature has chosen not to discard the "constructive voluntary quit" rule, we affirm.

Relator John R. Jansen, a member of the Electrical Workers Union Local 110, was employed for about a year by respondent Peoples Electric Company, Inc. Under the union contract, Jansen was a probationary, nonseniority employee, since he had not yet worked the 1,800 hours nor passed the examination required for seniority. On January 28, 1981, Jansen was "bumped" from his job and replaced by another union electrician, a man with seniority who had lost his job with another electrical contractor covered by the same collective bargaining agreement. Both parties agree that this replacement was required by the union agreement.

Jansen was willing and able to continue to work at the time of his termination, and there was no reduction in the number of electricians at Peoples Electric as a result of Jansen's being terminated. The seniority provision of his union's contract was the sole cause of Jansen's termination. Benefits were awarded by the claims deputy; the award was reversed by the Appeal Tribunal, and this denial of benefits was affirmed by the commissioner's representative. Jansen now seeks review here.

Minn.Stat. § 268.09, subd. 1(1) (1980), disqualifies an employee from benefits when "[t]he individual voluntarily and without good cause attributable to the employer" discontinues his or her employment. In

other words, when a termination is voluntary, benefits are awarded only when the employee had "good cause" to resign due to some conduct on the part of the employer. This is in keeping with a basic purpose of the statute to deny benefits to anyone whose termination was volitional and not a result of circumstances beyond his control. *Christensen v. Fiberite Corp.*, 269 N.W.2d 20 (Minn.1978).

In *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958), a movie projectionist who was a member of a nonlocal union lost his job to a member of the local union with seniority status. On these facts, nearly identical to those on this appeal, we denied benefits, holding that since the union was in effect the agent of the employee the employee's termination would be construed as voluntary. We explained:

Whether the separation from the employment is the voluntary or involuntary act of the employee is determined not by the immediate cause or motive for the act but by whether the employee *directly or indirectly* exercised a free-will choice and control as to the performance or nonperformance of the act. If the act of employment separation was performed by him directly of his own free will, *or indirectly by his act of vesting in another discretionary authority to act in his behalf*, the ultimate resulting act is a voluntary one which disqualifies him for compensation. This is likewise true when an employee acts directly in obedience to a representative control which, by his own choice, he has vested in another as his agent.

254 Minn. at 98, 93 N.W.2d at 819 (emphasis added).

The doctrine of "constructive voluntary quit," first enunciated by the court in *Anson*, has had a complex history since then, both in terms of the decisions of this court and the legislature's reaction.

In two earlier Minnesota cases, for example, benefits were denied employees who were put out of work by a vacation shutdown approved or required by their union. *Jackson v. Minneapolis-Honeywell Regula-*

*tor Co.*, 234 Minn. 52, 47 N.W.2d 449 (1951); *Johnson v. LaGrange Shoe Corp.*, 244 Minn. 354, 70 N.W.2d 335 (1955). In response to this judicial limitation of benefits, however, the legislature passed a statutory amendment providing that "any individual unemployed as a result of a uniform vacation shutdown shall not be deemed to be voluntarily unemployed." Minn.Stat. § 268.04, subd. 23 (1980).

Later, we held that termination of an employee due to a collectively bargained mandatory retirement plan should be considered a voluntary termination. *Bergseth v. Zinsmaster Baking Co.*, 252 Minn. 63, 89 N.W.2d 172 (1958). Nearly 20 years later, this decision was legislatively overruled by an amendment to section 268.09, subd. 1(2)(d), stating that disqualification from benefits should not result from forced retirement.

In 1979, in *Stawikowski v. Collins Electric Construction Co.*, 289 N.W.2d 390 (Minn. 1979), the employee lost his job as an electrician because of the seniority provisions of his union contract. This court followed *Anson* and denied benefits. The employee was working as an apprentice at the time, and the legislature responded to this conflict by leaving the broad constructive voluntary quit rule untouched but added an amendment on March 24, 1979, allowing benefits in those narrow instances where the employee "is separated from employment due to the completion of an apprenticeship program, or segment thereof * * *." Minn. Stat. § 268.09, subd. 1(2)(f) (1980).

In 1980, the interaction between this court's decisions and legislative amendments became more complicated. Two cases arose which challenged the constructive voluntary quit rule. In *Loftis v. Legionville School Safety Patrol Training Center, Inc.*, 297 N.W.2d 237 (Minn.1980), the employee had been hired for a temporary position only, for 11 weeks. In *Commissioner of the Department of Economic Security v. City of Duluth*, 297 N.W.2d 239 (Minn.1980), the employees were terminated because they failed to pass civil service examinations required for their continued em-

ployment. In both cases we held, on rehearing, that the terminations were not voluntary and thus we awarded benefits. Between the time our original opinions were filed and new opinions were issued on rehearing, the legislature again amended the statute, but again did so on a piecemeal, narrow basis. The 1980 amendments simply provided that "a separation from employment by reason of its temporary nature or for inability to pass a test or for inability to meet performance standards" would not be deemed a voluntary quit. Section 268.-09, subd. 1(1). But, as before, the broader constructive voluntary quit rule of *Anson* was left intact.[1]

The *Anson* rule has been strongly criticized. *See, e.g., Campbell Soup Co. v. Board of Review*, 13 N.J. 431, 100 A.2d 287 (1953); *Warner v. Unemployment Compensation Board of Review*, 396 Pa. 545, 153 A.2d 906 (1959); Annotation, *Termination of Employment as a result of union action or pursuant to union contract as "voluntary" for purposes of unemployment compensation benefits*, 90 A.L.R.2d 835, 843 (1963); Note, 64 Minn.L.Rev. 1243 (1980). We have noted these criticisms in our recent decisions. On the other hand, we have also noted our statute as construed by *Anson* has long been in force. "When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject intends the same construction to be placed upon such language." Minn.Stat. § 645.17, subd. 4 (1980). Consequently, in *Stawikowski* we said:

> When a longstanding judicial decision deeply rooted in social and economic considerations is not clearly wrong, we believe our proper role is to outline the problem, articulate the judicial view, and refer the matter to the legislature. We therefore exhort the legislature to con-

sider statutory changes in the definition of voluntary discontinuance of employment and provisions governing employer contributions, confident that its resolution will serve the best interests of the public.

289 N.W.2d at 395.

In response to this request of the legislature to consider statutory changes, the legislature has chosen not to repeal the *Anson* rule; instead, the legislature has so far left that rule intact in its general application and has only modified its application in narrow, carefully specified situations. In this context, we do not think we should overrule a statutory interpretation that the legislature has chosen not to overrule.

The facts of this case cannot be distinguished from *Anson* itself. Thus we conclude we must affirm the decision of the commissioner's representative.

Affirmed.

SCOTT, Justice (dissenting).

I respectfully dissent. We should reverse the denial of unemployment compensation benefits and, because of its long, arduous history, agree that the "constructive voluntary quit" rule of *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958), has had its last legal gasp. Our 1980 opinions in *Loftis v. Legionville School Safety Patrol Training Center, Inc.*, 297 N.W.2d 237 (Minn.1980), and *Commissioner of the Department of Economic Security v. City of Duluth*, 297 N.W.2d 239 (Minn.1980), clearly express our intention that *Anson* be overruled.

As the majority opinion points out, the doctrine of "constructive voluntary quit" was entirely a judicial creation. By statute, an employee is disqualified from receiving unemployment compensation benefits if the employee "voluntarily and without good

1. Relator cites language in *Loftis v. Legionville School Safety Patrol Training Center, Inc.*, 297 N.W.2d 237, 238, nn. 1 & 3 (Minn.1980), that *Anson* was legislatively overruled by the 1980 amendment to Minn.Stat. § 268.09, subd. 1(1), 1980 Minn.Laws, ch. 508, § 9. We think this language in *Loftis* states the case too broadly.

The 1980 amendment was addressing only our original *Loftis* and *City of Duluth* opinions. While some of the rationale behind *Anson* may have been questioned or limited by these amendments, we do not think it can be said the legislature overruled *Anson*.

cause attributable to the employer" discontinues his or her employment. Minn.Stat. § 268.09, subd. 1(1) (1980). The legislature, however, has not defined "voluntary."

This court, in *Anson,* used the judicially created doctrine of "constructive voluntary quit" to hold that an employee is deemed to have voluntarily quit his employment when in fact he has not done so. In *Anson,* as in the case before us, where the employee had voluntarily accepted the employment as governed by the union's collective bargaining agreement, the termination was deemed voluntary when he was "bumped" by union seniority rules, even though the employee did not want to give up his job and had no choice in the matter.

This rule is contrary to the policy underlying the unemployment compensation statutes. The declaration of public policy in section 268.03 stresses that "unemployment reserves [are] to be used for the benefit of persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1980). A position more consistent with this stated policy is that expressed in the leading case of *Campbell Soup Co. v. Board of Review,* 13 N.J. 431, 100 A.2d 287 (1953). In that case Justice Brennan, then a member of the New Jersey court, developed a test based upon the employee's situation at the time of the termination. Under this test, a termination is voluntary only "where the decision whether to go or to stay lay at the time with the worker alone." *Id.* at 435, 100 A.2d at 289.

The only sense in which relator can be said to be unemployed because of his own fault is that he took a job in a field with a seniority system already intact which he could foresee would lead to his being unemployed if the electrical trade ever enjoyed less than full employment. This should not make his eventual termination voluntary so as to deny him unemployment benefits.

We have previously recognized the inequities in the constructive voluntary quit rule as enunciated in *Anson.*[1] While deciding the case on other grounds, in *Hanson v. I.D.S. Properties Management Co.,* 308 Minn. 422, 242 N.W.2d 833 (1976), we expressed the following:

> Counsel for the employee illustrated well at oral argument a principal problem with *Anson.* The statutory scheme underlying unemployment compensation tends to force an individual to sign a union contract to take an available job, then denies him benefits when he is "bumped" on the theory that he voluntarily consented to termination.

*Id.* at 425, 242 N.W.2d at 835.

The legislature has also recognized the inequities of the rule. Every case in which this court has applied the constructive voluntary quit rule of *Anson* to disqualify otherwise eligible claimants has been overruled by legislative action.

The most recent interaction began with *Stawikowski v. Collins Electric Construction Co.,* 289 N.W.2d 390 (Minn.1979), in which this court considered the voluntariness of a termination resulting from a seniority provision in a collective bargaining agreement. We concluded that the equities favored an award of benefits:

> The department [of Economic Security] urges that our prior decisions be reversed, that the constructive voluntary termination rule be repudiated, and that the test for voluntariness enunciated in the *Campbell Soup* case be adopted. We fully agree that the underlying purpose and objective of our unemployment compensation statute would be better served by applying the test advocated by claimants and the department * * *."

*Id.* at 394. We nevertheless denied benefits, with an exhortation to the legislature to consider statutory changes in the definition of voluntary. *Id.* at 395.

Even before the opinion was filed, the legislature addressed the specific fact situation of *Stawikowski* and enacted an amendment allowing unemployment benefits to be

---

1. *Loftis v. Legionville School Safety Patrol Training Center, Inc.,* 297 N.W.2d 237, 238–39 (Minn.1980); *Stawikowski v. Collins Electric Construction Co.,* 289 N.W.2d 390, 394 (Minn. 1979).

paid to an individual who became unemployed due to the completion of an apprenticeship program.[2] *Stawikowski* was thus legislatively overruled at the time the opinion was filed.

The court then granted petitions to rehear *Loftis* and *City of Duluth*, whose initial opinions denying benefits in situations involving temporary employment and termination of civil service employees were filed simultaneously with *Stawikowski*.[3]

While these rehearings were pending, the legislature added the second sentence to the definition of "voluntary leave"[4] to negate legislatively the impact of any decision denying benefits. The section now reads as follows:

> Voluntary leave. The individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer. For the purpose of this clause, a separation from employment by reason of its temporary nature or for inability to pass a test or for inability to meet performance standards necessary for continuation of employment shall not be deemed voluntary.

Minn.Stat. § 268.09, subd. 1(1) (1980).

Upon rehearing, the original opinions in *Loftis* and *City of Duluth* were withdrawn and the constructive voluntary quit rule of *Anson* was not applied to these employees. Their termination was not deemed voluntary and benefits were awarded, even though, as in *Anson*, these employees had accepted work knowing it was of a limited or limitable duration. The opinions specifically state in four places that the effect of

the amendments is to overrule *Anson*[5] and that *Anson* is no longer viable.[6]

Respondent Peoples Electric contends that the legislature, by failing to enact an amendment specifically overruling the constructive voluntary quit rule, has intended to reaffirm the *Anson* rule. The applicable rule of construction,[7] however, requires precisely the opposite conclusion. Our most recent construction of the voluntary quit statute in *Loftis* and *City of Duluth* states that the *Anson* rule is dead. Even though the facts of *Anson* may differ, its vitality is fully undermined by the decisions in *Loftis* and *City of Duluth*. By inaction, the legislature is presumed to have adopted this construction.

Relator is also entitled to benefits because he was terminated for good cause attributable, at least in part, to the employer. Minn.Stat. § 269.09, subd. 1(1) (1980). Relator did not choose of his own volition to leave Peoples Electric. He left because he had no alternative but to comply with the seniority system in effect. That seniority system was the result of collective bargaining between the union and the bargaining representative of the employer, the St. Paul Chapter of the National Electrical Contractors Association (NECA). To suggest that Peoples Electric does not benefit by the outcome of this collective bargaining process, as well as its employees, is to ignore the realities of the bargaining process. It is more reasonable to say that an employer is equally responsible for the outcome of industry-wide collective bargaining. When the industry hires or fires as the economy rises and falls, the theory is that the costs to the employer will balance out on an

---

2. Act of May 24, 1979, ch. 181, § 11, 1979 Minn.Laws 272, 273, codified at Minn.Stat. § 268.09, subd. 1(2)(f)(1980).

3. No petition for rehearing was filed for *Stawikowski*; it was presumably considered unnecessary because of favorable legislative action.

4. Act of April 7, 1980, ch. 508, § 9, 1980 Minn. Laws 478, 479. The effective date for that particular provision was July 27, 1979, the date the original *Loftis* and *City of Duluth* opinions were filed.

5. 297 at 238 & nn.1, 3.

6. 297 at 241 n.1.

7. The rule is found in Minn.Stat. § 645.-17(4)(1980):

> When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language.

industry-wide basis over the period of the contract.

Because the constructive voluntary quit rule has been abolished since *Loftis*, and because relator is entitled to benefits under the statute, I would reverse the denial of benefits.

TODD, Justice (dissenting).

I join in the dissent of Justice Scott.

YETKA, Justice (dissenting).

I join in the dissent of Justice Scott.

WAHL, Justice (dissenting).

I join in the dissent of Justice Scott.