Rebecca S. WHITE, Relator,

v.

**METROPOLITAN MEDICAL CENTER, Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C2-82-1445.**

Supreme Court of Minnesota.

April 15, 1983.

Stephen R. O'Brien, Minneapolis, for relator.

Peterson Bell & Converse and David S. Anderson, St. Paul, for Metropolitan Medical Center.

Hubert H. Humphrey III, Atty. Gen., and Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

TODD, Justice.

The employee Rebecca S. White obtained a writ of certiorari to review a decision of the Commissioner, Department of Economic Security determining that she was disqualified from the receipt of unemployment compensation benefits. We affirm.

The claimant was initially employed by Metropolitan Medical Center from April 22, 1978, to July 9, 1979. During this time, she joined the union and by doing so, agreed to the terms of the collective bargaining agreement governing her and other nonprofessional employees' employment. A provision of that agreement directed the employer, upon written notice from the union, to terminate the employment of any union member not in good standing for failure to pay regular monthly dues. There is no dispute that when White terminated her employment with MMC in 1979 for personal reasons, she was not in good standing as defined by the agreement because she had not paid $81.25 accrued union dues.

White was rehired by the medical center on December 15, 1980. At this time, White authorized her employer to automatically withhold union dues that thereafter became due for direct payment to the union. White did not, however, pay past arrearages of dues from her prior period of employment.

As a result, the union notified White and her employer in letters dated April 7, 1981, November 9, 1981, and November 25, 1981, that White was delinquent in union dues for the months of August 1978 to June 1979 in the amount of $81.25. The union informed her that failure to pay the delinquent dues would require the union to request her immediate dismissal from the medical center, pursuant to the terms of the collective bargaining agreement.

Although White indicated to union representatives that she would make installment payments of the delinquent dues, she made no payments. The union thereafter demanded White's immediate dismissal on December 15, 1981. On December 22, 1981, MMC informed White of her termination caused by her failure to pay back union dues. At no time has MMC claimed that White's job performance was less than adequate or that MMC did not have available work for White. The commissioner ultimately held that White's dismissal constituted a constructive voluntary separation, that she could establish no good cause attributable to her employer, and that she was therefore disqualified from collecting unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1 (1982).

The narrow standard of review requires that findings be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed. *Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181, 183 (Minn.1977).

The record establishes that White was not in good standing with the union as defined in the agreement and that she could have remedied her position by payment of $81.25 in back dues. Public policy dictates unemployment compensation benefits extend only to those persons who are involuntarily unemployed through no fault of their own. *Auger v. Gillette Co.,* 303 N.W.2d 255, 257 (Minn.1981). We cannot charge an employer with the employee's failure to satisfy this obligation, particularly where White had agreed in response to union de-

mands to make installment payments to pay the arrearages. Because White could have retained her employment by paying $81.25 in back dues, we conclude that there is substantial recorded evidence to support the determination that she is disqualified from the receipt of unemployment compensation benefits.

Affirmed.

PETERSON, Justice (dissenting).

I dissent on narrow grounds raised by the unique facts of this case.

The employee was employed by the Metropolitan Medical Center (MMC) as a nurse's aide, a classification covered by a collective bargaining agreement between MMC and Hospital and Nursing Home Employees Union, Local 113, AFL–CIO. The agreement provided that a covered employee must become and remain a member of the union in good standing by the payment of a standard initiation fee and standard regular monthly dues (or if the employee elected not to join the union, to pay an agency fee equivalent to the same initiation fee and monthly dues), a requirement enforceable by termination of employment upon failure to do so. The employee did join the union and pay the initiation fees but became delinquent in the payment of monthly dues. She terminated her employment for personal reasons, leaving unpaid a balance of $81.25 due the union.

Seventeen months later, the employee was again hired by MMC. She again joined the union, paying the initiation fee required of new employees, and during the time of this employment, regularly paid the monthly dues, this time by means of a check-off authorization under which the employer deducted the amount of the dues and remitted them to the union. The union demanded that she pay the dues owing from her prior employment and, upon her failure to comply, the union requested that the employer discharge her, which was done. She then filed her claim for unemployment compensation.

The commissioner, affirming a like decision of the Appeal Tribunal, said:

[T]he attorney for the claimant argues that the union had no right to demand payment of the dues in question insofar as they covered a prior period of employment and the union had waived any right it had to payment of the dues. The employer's attorney [who is also the attorney for Local 113] argues that this matter is covered by the constructive voluntary quit rationale which the Minnesota Supreme Court has enunciated in a series of cases including *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 NW 2d 815 (1958). *Bergseth v. Zinsmaster Baking Co.*, 252 Minn. 63, 89 NW 2d 172 (1958) and most recently, *Jansen v. Peoples Electric*, 317 NW 2d 879 (Minn.1982). Those cases essentially establish the premise that if the act of employment separation was performed by an individual indirectly, by the act of vesting in another discretionary authority to act in his behalf, the ultimate resulting act is a voluntary one which disqualifies the individual from unemployment compensation. * * * Under the provisions of the collective bargaining agreement the employer was required to terminate the claimant within three days of written notice to do so from the union. In our opinion, the claimant had, under the rationale set forth in *Bergseth, Anson,* and *Jansen,* vested in the union, authority to act on her behalf, and the separation must be construed as a constructive voluntary separation. No good cause attributable to the employer has been shown for the same, therefore, the disqualification contained in Minnesota Statute § 268.09, Subdivision 1 must be applied.

The unique and critical factor of this case is that the discharge for non-payment of dues did not relate to the period of employment from which the employee was discharged but, rather, to a prior and distinct period of employment. The union undoubtedly has a proper claim for the $81.25 based upon her own membership contract with the union, but it is not enforceable under the independent labor contract between her union and the employer. Although we have

had no occasion to adjudicate this issue ourselves, we may, as we so frequently have done in such situations, draw on the precedents of the National Labor Relations Board and the federal courts under the national labor relations statutes comparable to our state labor relations statutes. It appears well settled under the federal precedents that when employees terminate their relationship with an employer and are subsequently hired by the same employer, they are treated as new employees for purposes of determining their obligations under the union security clause of the collective bargaining agreements between the union and the employer. *Idarado Mining Company,* 77 NLRB 392 (1948); *Yellow Cab Company,* 148 NLRB 620 (1964). *See also Teamsters Local Union No. 174 (Consolidated Fruit and Produce Company),* 149 NLRB 1570 (1964); *Local Union No. 38, Sheet Metal Workers' International Association (Mid-Hudson Sheet Metal, Inc.),* 183 NLRB 110, 117 (1970); *Local Union 399, International Brotherhood of Electrical Workers,* 200 NLRB 1050 (1972), *enf'd,* 499 F.2d 56 (7th Cir.1974); *Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (Yellow Cab Company of Tampa, Inc.),* 205 NLRB 890 (1973), *enf'd,* 498 F.2d 1105 (5th Cir.1974); *Industrial Towel and Uniform Service, a Division of Cavalier Industries,* 195 NLRB 1121 (1972), *enforcement denied,* 473 F.2d 1258 (6th Cir.1973); *Association of Western Pulp & Paper Workers (Fibreboard Paper Products Corp.),* 170 NLRB 49, 51 (1968), *enf'd,* 431 F.2d 1206 (9th Cir.1970).

The issue before us is neither whether the union and the employer made a good faith construction of these agreements nor whether the employer or the union has committed an unfair labor practice under state or federal law. There is no question, of course, about the propriety of the maintenance of membership provision of the collective bargaining agreement itself, for it is a common and lawful provision in labor-management relations. The only question is whether the application of that collective bargaining agreement to these particular facts may disqualify this employee for un-

employment compensation. It is my view that the commissioner in applying the agreement as he did, under the facts presented, proceeded on an erroneous theory of law, reviewable by this court.

KELLEY, Justice (dissenting).

I join in the dissent of Justice PETERSON.