**Robert TARALDSON, Respondent,**

v.

**DAILY PRINTING, INC., Relator,**

**Commissioner of Economic Security, Respondent.**

**Donald R. JOHNSON, Respondent,**

v.

**DAILY PRINTING, INC., Relator.**

**Anthony E. ZELAZNY, Respondent,**

v.

**DAILY PRINTING, INC., Relator.**

Nos. C3–84–1409, CX–84–1410, C1–84–1411.

Court of Appeals of Minnesota.

Jan. 29, 1985.

Steven C. Miller, Minneapolis, for Daily Printing.

Ann M. Spencer, Minneapolis, for Taraldson, Johnson, Zelazney.

Hubert H. Humphrey III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator Daily Printing, Inc. appeals from the Commissioner of Economic Security's determination that respondents were involuntarily terminated from their employment on January 16, 1984 and not disqualified from receiving benefits. We affirm.

## FACTS

Claimants Robert Taraldson, Donald Johnson and Anthony Zelazny are former employees of relator Daily Printing, Inc. They are members of Graphic Communications International Union Local 229 which, until December 7, 1983, represented the lithographers at Daily Printing.

The last collective bargaining agreement between relator and Local 229 expired April 30, 1983. Following negotiations for a new contract, Local 229 went on strike about June 20, 1983. During the strike, Daily hired permanent replacement employees to perform the work formerly done by claimants and other striking union members. Fourteen Local 229 members who worked at Daily before the strike were replaced by 16 new workers.

Claimants filed for unemployment compensation benefits in September 1983, during the strike. Benefits were denied at that time.

On December 1, 1983, the National Labor Relations Board conducted an election to determine whether a majority of Daily's employees wanted continued representation by Local 229. Both permanent replacements and striking union members voted. The union did not receive a majority of votes cast. On December 7, 1983, the National Labor Relations Board issued a formal certification that, as a result of the election, no organization was the exclusive bargaining representative of the Daily lithographers. The union then discontinued the picketline and the strike ended.

Respondents were not recalled to work, were not contacted by Daily, and they did not inquire about the availability of work.

The Commissioner determined claimants were involuntarily terminated for reasons other than misconduct and were eligible for benefits.

## ISSUE

Does the record support the Commissioner's finding that respondents were involuntarily unemployed and qualified for unemployment compensation benefits?

## ANALYSIS

1. This court has frequently noted the narrow scope of review available in Economic Security cases.

The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

In this matter, the Commissioner found (1) respondents were involuntarily terminated because no employment was available for them at the end of this strike, and (2) relator "would not have hired the claimant at the close of the labor dispute had the claimant applied for work." The record supports these findings.

2. The employer argues respondents voluntarily quit with no good cause attributable to the employer.

Minn.Stat. § 268.09, subd. 1(1) (Supp. 1983), provides that an individual who "voluntarily and without good cause attributable to the employer" discontinues his employment is disqualified from receiving unemployment compensation benefits. The employer argues the discontinuance of employment (1) was without good cause attributable to the employer, (2) was not due to any action by the employer, and (3) the union was decertified and the strike ended by the action of the employees themselves.

Although claimants voted in the election, the decertification was not voluntary on their part. It was stipulated these employees voted against decertification. Thus, although the unemployment may not have

been caused by the employer, it was not voluntary on the part of the respondents.

3. Employer argues the unemployment was voluntary because respondents failed to apply for re-employment with relator.

Minn.Stat. § 268.09, subd. 2 (Supp.1983), provides an individual is disqualified from receiving benefits:

> if the commissioner finds that he has failed, without good cause, either to apply for available, suitable work of which he was advised by the employment office, or the commissioner or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the commissioner, or to accept a base period employer's offer of re-employment * * *.

*Id.*

The Commissioner found, and relator-employer concedes, no offer of re-employment was made. Employer argues before an offer could be made, respondents were required to re-apply for employment.

Nothing in our unemployment statute requires a claimant to re-apply for employment. Federal labor laws, however, require an employee to make an unconditional offer to return to work before the employee has a right to reinstatement. *Indiana Ready Mix Corporation*, 141 NLRB Dec. (CCH) 651 (1963). *Astro Electronics, Inc.*, 188 NLRB Dec. (CCH) 572 (1971), held there is no requirement where the employee shows such application would be rejected and reapplication would be futile.

Daily Printing testified there was no work available. The Commissioner found that an application by claimants would have been futile and refused to disqualify them.

4. Finally, relator argues the Commissioner should have remanded the Taraldson matter to the referee to receive evidence about a written statement made to the Commissioner's representative. In this statement Taraldson stated he did not contact the employer about re-employment saying, "I chose not to contact the employer because I belonged to an exclusive union (Local 229), and this is no longer a union shop. My union finds employment for me."

The Commissioner's representative determined it was unnecessary to remand because, even if the statement were admitted into evidence, it would have no bearing on his decision. We agree. Because claimant had no obligation to contact the employer under these facts, the reason he did not is irrelevant in determining whether he failed to accept re-employment.

**DECISION**

The record supports the Commissioner's determination that claimants did not voluntarily quit, pursuant to Minn.Stat. § 268.09, subd. 1(1). The respondents were involuntarily separated for reasons other than misconduct and are not disqualified from receiving unemployment benefits. Because requests for re-employment with the employer would have been futile, claimants were under no duty to seek re-employment.

The Commissioner's decision finding claimants eligible to receive unemployment compensation benefits is affirmed.

Affirmed.