Terrance A. **BURTMAN**, Relator,

v.

**DEALERS DISCOUNT SUPPLY,**
Respondent,

**Commissioner of Economic
Security,** Respondent.

No. C2–83–2069.

Court of Appeals of Minnesota.

April 24, 1984.

Review Denied July 26, 1984.

Bruce M. Badenoch, Minneapolis, for relator.

William J. Hanley, Minneapolis, for respondent Dealers Discount Supply.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondent Com'r of Economic Sec.

Considered and decided by POPOVICH, C.J., and WOZNIAK and PARKER, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

When Terrance Burtman applied for unemployment benefits, a department claims deputy found him ineligible. On appeal, the department referee reversed, finding good cause attributable to the employer for Burtman's termination. The employer appealed to a commissioner's representative who reversed the referee, holding that Burtman had a duty to inform his employer of his objections to the employer's business practices and to allow time for their correction.

We affirm.

## FACTS

Burtman began work at Dealers Discount Supply, selling automotive parts by telephone, on June 6, 1983. He reported late to work on the next two days, June 7th and 8th. His supervisor warned him not to report for work if he was tardy again. Burtman asked for an extended lunch hour on June 8th to arrange for reconnection of the gas supply to his home. The gas had been turned off for non-payment on June 6, 1983. Although Burtman's supervisor was aware of the reason for the request, he denied permission. Burtman did not report to work the following day. The parties agree that Burtman left his job voluntarily.

Burtman was instructed to follow a written script for his phone calls which included the word "hell" and sexually suggestive jokes. Burtman was also encouraged to tell customers that he would win a shot gun for his 11-year old son if the customer bought enough merchandise. Burtman did not have an 11-year old son.

## ISSUES

1. Where claimant voluntarily left employment, partly for personal reasons and partly because the employer required conduct alleged to be illegal and immoral, is there good cause attributable to the employer under Minn.Stat. § 268.09, subd. 1(1), for claimant's quitting?

2. Does claimant's failure to inform his employer of his objections to company practices and to allow time for the employer to change those practices prevent a finding of good cause attributable to the employer?

## ANALYSIS

■ An individual is disqualified from receiving unemployment benefits if:

The individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer.

Minn.Stat. § 268.09(1)(1) (Supp.1983). The Minnesota Supreme Court has held that this section "does not require that *all* causal factors in a termination flow from the employer, but that termination be wholly 'without good cause attributable to the employer.'" *Hanson v. I.D.S. Properties Management Co.*, 308 Minn. 422, 424, 242 N.W.2d 833, 835 (1976). The law does not require that cause attributable to the employer be the sole reason for termination. Burtman's grievance regarding the employer's business practices was no less a significant factor in his separation than his desire to take care of his utility problems. The commissioner's representative's finding that Burtman was instructed to engage in conduct he considered illegal and immoral is supported by the record. The employer's insistence upon sales tactics repugnant to Burtman, and to this court, would be good cause attributable to the employer if Burtman gave sufficient notice of his objections to his employer.

■ An employee who does not report offensive work conditions to his employer before quitting forecloses a finding of good cause attributable to the employer. *Larson v. Department of Economic Sec.*, 281 N.W.2d 667 (Minn.1979). In *Larson*, a janitor reported some of the problems he was experiencing with co-workers to his manager after some six weeks of work. The manager promised to talk with the offender and asked the janitor to return if the situation worsened. Approximately six weeks later, the janitor quit. The Supreme Court denied benefits, holding that it was the employee's burden to fully inform his employer of continuing problems.

■ Burtman testified that on one occasion he did substitute "heck" where "hell" was written in the sales pitch. His supervisor reprimanded him and told him to read the pitch as written. There is no further evidence of Burtman voicing his objections to his supervisor or the president of the company. The janitor in *Larson* notified his superiors, but did not follow up on his complaint before voluntarily terminating. The janitor was, nonetheless, disqualified. Burtman failed to notify his superiors of his grievances even once. He must also be disqualified.

## DECISION

Voluntary termination without notice of objections to allegedly immoral or illegal practices after only three days on the job disqualifies Burtman from receiving unemployment compensation.

Affirmed.