**Emory KRAFT, Relator,**

v.

**INDEPENDENT DELIVERY SERVICE, Department of Economic Security, Respondents.**

**No. C7–85–1245.**

Court of Appeals of Minnesota.

Nov. 26, 1985.

Emory Kraft, pro se.

Wm. Christopher Penwell, St. Paul, for Independent Delivery Service.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

**OPINION**

NIERENGARTEN, Judge.

Relator appeals from a determination by the Commissioner of Economic Security that he voluntarily terminated his employment without good cause attributable to his employer. We affirm.

**FACTS**

Relator, Emory Kraft, was employed by respondent Independent Delivery Service, Inc. as a courier from November 1983 to February 1985. The respondent employer is a private postal system in the business of delivering third class advertising material. Due to the fluctuating nature of the employer's business, employees are required to sign up each week on a first-come-first-

serve basis for hours to be worked the following week.

Throughout his period of employment, Kraft had generally signed up to work on Mondays through Wednesdays but on Friday, February 15, 1985 he was informed that those days had already been filled by employees who had signed up the day before. Kraft was advised that he might be able to work other days instead but he became upset and resigned.

Kraft filed a claim for unemployment compensation, and a claims deputy determined he had quit with good cause due to a substantial reduction in his hours. The employer appealed, and a referee heard testimony by both parties concerning the employer's signup policies and the circumstances surrounding Kraft's termination. Kraft testified that he quit because more senior employees were not given the opportunity to sign up for work before less senior employees, and that he had been receiving fewer hours than less senior workers. He also testified that there was no particular day to sign up, and that he had thought · Friday, February 15 was the day to sign up for work the next week.

The employer testified that signup for work on Mondays through Wednesdays always began on the previous Thursday, that all employees, including Kraft, were aware of the Thursday signup, and that employees could call in their work requests if they did not want to come in on Thursday. Kraft had done this in the past.

The employer explained that the weekly signup system had been developed because the amount of available work varied from week to week and the signup process allowed employees to choose their hours each week. The process also allowed the employer to be certain of which employee would actually work which days.

Kraft testified that the person who conducted the signup "played favorites" and refused to allow more senior employees to sign up first if several employees all wanted to signup at once.[1] Kraft claimed the previous person in charge of· the signup had given the first signup opportunities to those employees who had worked there longer. This claim was rebutted by the employer's testimony that Kraft had almost always received the work which he had requested, had never complained to management and, in any event, had not even been present at the signup on Thursday, February 14 when the upcoming Monday through Wednesday work period had been filled. The employer also introduced a record of Kraft's work hours, which indicated that his hours had not been reduced as he claimed.

After considering this testimony, the referee determined:

> The claimant initiated his own loss of work hours when he failed to comply with the employer's known policy to report on Thursday to be assigned work for the following Monday through Wednesday. The claimant's reasons and excuses for his failure to report or call in were not due to good cause or exigent circumstances. The claimant's work hours would not have been substantially reduced but for the claimant's own actions. The claimant failed to show any employer-initiated reduction in work hours timely related to the claimant's separation.

> The referee finds that the claimant's separation was due to the claimant's own particular dislike of the employer's policies regarding assignment of work. Those policies are not found unreasonable in light of the employer's business.

The referee concluded that Kraft had voluntarily terminated his employment without good cause attributable to his employer. Kraft appealed, and a Commissioner's representative affirmed, noting:

> The claimant made no effort to contact any other member of management * * *. The claimant did not furnish any valid

<hr />

1. It should be noted that by "senior", relator refers only to seniority. He makes no claim based upon age discrimination.

reason either at the hearing or on review for his failure to call in and restate his availability or in the alternative take his complaint to the management of the company. There is no showing that the claimant would not have been assigned hours substantially equal to his previous week had he not submitted his resignation in haste.

## ISSUES

Did relator sustain his burden of proving that he had good cause to terminate his employment?

## ANALYSIS

An individual is disqualified from receiving unemployment compensation benefits if he "voluntarily and without good cause attributable to his employer discontinued his employment." Minn.Stat. § 268.09, subd. 1(1) (1984). The employer has the initial burden of proving that the employee terminated his employment, *Marz v. Department of Employment Services*, 256 N.W.2d 287, 289 (Minn.1977); the burden then shifts to the employee to prove that he left for good cause attributable to his employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn. 1978).

Here there was no evidence that the conditions of Kraft's employment had changed. Kraft himself testified that when he was hired he knew he would not be guaranteed any specific hours of work. Although Kraft testified that a new person handled the signup differently, the employer testified that it was the same as always. Resolution of factual disputes should be left to the Commissioner, whose findings should be sustained if there is evidence reasonably tending to sustain them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983); *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct.App.1984).

The Commissioner's determination that Kraft did not have good cause to quit is supported by the record. In addition, as the Commissioner noted, even if an employ-

ee is subjected to offensive work conditions, before he quits he must first report those conditions to his employer, who should be given the opportunity to correct the problem. *See Burtman v. Dealers Discount Supply*, 347 N.W.2d 292, 294 (Minn.Ct.App.), *pet. for rev. denied*, (Minn. July 26, 1984). Kraft admitted at the hearing that he had never expressed to the employer his dissatisfaction with the signup procedure.

## DECISION

The Commissioner's determination that relator voluntarily terminated his employment without good cause attributable to his employer is affirmed.

Affirmed.