**William A. HOLTON, Respondent,**

v.

**GNAN TRUCKING, INC., Relator,**

**Commissioner of Economic Security, Respondent.**

**No. C2–85–1587.**

Court of Appeals of Minnesota.

Dec. 24, 1985.

William A. Holton, pro se.

Steven A. Hanson, Brainerd, for relator.

Hubert H. Humphrey, III, Atty. Gen., Laura Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Relator, Gnan Trucking, Inc., seeks review of a determination by the Commissioner of Economic Security that respon-

dent William Holton's actions did not constitute misconduct. We reverse.

## FACTS

Respondent William Holton had been working as an over-the-road truck driver for relator, Gnan Trucking, Inc. (Gnan), for approximately four years when he was discharged on April 13, 1985. Respondent applied for unemployment compensation and a claims deputy denied him benefits, determining that he had been discharged for threatening a customer of Gnan and for using foul and abusive language towards the customer.

Respondent appealed, and a referee reversed the claims deputy's decision. Although agreeing that respondent had been discharged because the president of Gnan believed he had been rude to customers, after hearing the evidence presented by the parties and the respondent's explanations, the referee determined that respondent's testimony was more credible and that his conduct had not amounted to willful misconduct.

Gnan appealed, and a Commissioner's representative affirmed the referee's decision, noting that Gnan had merely "presented conclusionary statements made by customers who were not present at the hearing and not subject to inquiry as to the basis of their conclusions," whereas respondent had been a direct participant in the events. The Commissioner's representative deferred to the referee's determination of credibility, and upheld his conclusion that respondent had not engaged in willful misconduct.

## ISSUES

1. Did the Commissioner's representative erroneously determine that respondent's actions did not constitute willful misconduct?

2. Was Gnan Trucking prejudiced by alleged errors in procedure which occurred during the hearing?

## ANALYSIS

### I.

*Misconduct*

A person is disqualified from receiving unemployment compensation benefits if he is discharged for misconduct. Minn.Stat. § 268.09, subd. 1(2) (1984). The Minnesota Supreme Court has defined "misconduct" as follows:

[T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941). An employer has the burden of proving misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

David Gnan testified that he fired respondent because he was losing customers due to respondent's actions. Respondent had an "explanation" for everything. Gnan cited three specific instances of respondent's alleged misconduct:

1. Incident Regarding Career Clothes.

Gnan testified that in June 1984 he received a letter from the owner of Career Clothes which stated:

We received a shipment July 16, 1984 * * via your truck line. This is to advise your driver was extremely rude to my employee. If I would have been here the freight would not have left your truck. At least we learned never to ship on Midwest Motor Express, Inc. again.

Gnan Trucking is a cartage agent for Midwest Motor Express, and Gnan identified appellant as the driver in question from the shipment number. Gnan testified that he called about the letter and was told that appellant had wanted to "tailgate the shipment" and make the customer help with unloading the boxes.

2. Incident Regarding Zephyr Transport.

In March, 1985, Gnan received a complaint by Zephyr Transport in the form of a letter which stated:

I wish to inform you of my displeasure in an incident that occurred this week concerning your driver Bill Holton.

Mr. Holton called this office and spoke in a threatening manner with the dispatcher concerning a delay in trip-lease pay offs. He called back again later to this office and talked with me concerning the same subject. He threatened me personally and said he was coming into the office for an "attitude adjustment" session.

This lack of professional behavioral appalls me. Because I know this i[s] contrary to how you expect your representatives to act I will not hold it against your company this time. However, Zephyr Transport no longer wishes to have any business dealings with Mr. Holton again.

Gnan testified that he had asked respondent to talk to the company about a payment which Zephyr never made, but that he had not intended respondent to "carry on like that."

3. Incident Regarding Wrightco, Inc.

Gnan testified that an incident involving Wrightco, Inc. was the "last straw" which resulted in respondent's discharge. In April, 1985, Gnan received the following letter from Wrightco:

The following is information on your driver that delivered filler flats to Wrightco on 4-5-85.

Driver arrived approximately 5:00 A.M. I, Larry Paumen, foreman, told your driver, Holton, that we wouldn't be able to start unloading until 7:00 A.M. Driver asked what our unloading policy was and I told him that we furnished one man in the truck and one forklift driver, and the truck driver is required to help unload in the trailer.

Your driver told me that he hadn't slept for two days so he was going to lay down and we fhere (sic) to wake him up when we started unloading. After we started unloading I sent an employee out to wake him. Your driver then offered us $10 to unload the truck but I told our employee that it would be $20 or he (Holton) would have to help. When our employee went back to tell your driver this, he called me a fucker. He then came looking for me and asked why I wanted $20 to unload truck. I told him that we charged $1 per M weight as this was approximately the extra labor cost involved. We had stopped unloading the truck during the hassel so he then told me to get a fucking guy in the truck because the load is coming off right now. My employees told me he was very hard to work with during unloading. He swore alot and at times threw the bundles of filler flats. He told my employee's that he was in a motorcycle gang and he was going to get me or wreck something I had. After he left I reported the incident to my supervisor who called the company Wrightco bought the product from, and told them we didn't want that driver back here again.

Respondent offered explanations of his conduct upon each of the above occasions. Regarding the Career Clothing incident, respondent testified that he had brought a truckload of boxes in and had informed the customer that he needed her to sign for them right away because he didn't have time to wait for her to finish what she was

doing. Respondent admitted telling a Zephyr Transport employee that he needed an "attitude adjustment," but indicated that this was in response to the Zephyr employee's statement that collection was none of his business. Respondent also indicated surprise that Gnan was dissatisfied with his actions since he was simply trying to follow Gnan's orders to give Zephyr "static." Finally, respondent denied using any foul or abusive language at Wrightco.

The Commissioner's representative found respondent's testimony credible, and determined that his discharge had not been for the kind of misconduct warranting denial of unemployment benefits. In so doing, the Commissioner's representative affirmed the referee's determination.

We recognize that our scope of review of the Commissioner's decision is limited. Factual findings may not be disturbed if there is evidence in the record which reasonably tends to support those findings. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1984) (citations omitted). Determinations involving credibility lie especially within the province of the Commissioner, whose decision generally should not be questioned. *LaSalle Cartage Co., Inc. v. Hampton,* 362 N.W.2d 337, 341 (Minn.Ct.App.1985) (citations omitted).

Despite this limited scope of review, in the present case we are convinced that the record does not support the Commissioner's decision. Gnan presented three independent statements by customers who were dissatisfied with respondent. None of these customers had reason to fabricate complaints. None had reason to color their observations to worsen the facts. The letters were clear, straightforward, and itemized with specific detail. One writer indicated an intention to stop doing business with Midwest Motor Express, one of Gnan's businesses, and the other two specified that they wanted no further dealings with Mr. Holton.

In examining the letter and spirit of *Tilseth,* respondent's conduct unequivocally shows an intentional and substantial disregard for the best interests of Gnan Trucking. The quality of a company's public relations with their customers is directly related to impressions given by their employees who deal with customers in a business setting.

The referee did not provide any specific reason why he found Holton's testimony more credible than the customer complaints other than that Holton was personally present and the customers appeared by their letters. The Commissioner's representative merely stated:

> It is clear the Referee gave more credence to the testimony of the claimant because he was a direct participant in the events complained of. It appears the employer presented conclusionary statements made by customers who were not present at the hearing and not subject to inquiry as to the basis of their conclusions. As a result these statements had little probative value.

We do not accept this analysis of the weight of the evidence. The customers' statements were far more than conclusionary. The letters detailed specific offensive behavior. They contained phrases, times, places, and other details making fabrication unlikely. Each letter was based upon the customer's personal interaction with respondent.

We find that the record can only support the conclusion that respondent's conduct evidenced a substantial disregard of Gnan's interests, and constituted misconduct as a matter of law.

## II.

### *Procedure*

Because we reverse the Commissioner's decision, Gnan's other objections to alleged irregularities in procedure will not be addressed.

## DECISION

The record as a whole does not support the Commissioner's determination that respondent did not engage in the conduct

complained of. The decision of the Commissioner's representative is reversed.