**DURA SUPREME, Relator,**

v.

**Brenda KIENHOLZ, Department of Economic Security, Respondents.**

**No. C6-85-1799.**

Court of Appeals of Minnesota.

Feb. 11, 1986.

Patricia Yoedicke, Wayzata, for relator.

Patrick J. Neaton, Minneapolis, for Brenda Kienholz.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK, and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

Relator Dura Supreme appeals from a determination that respondent Brenda Kienholz quit with good cause due to sexual harassment. We affirm.

### FACTS

Brenda Kienholz was employed by Dura Supreme as an assembly line production worker. On April 2, 1985 Kienholz noticed the co-owner of Dura Supreme, Don Stotts; her foreman, Duane Malquist; and a co-worker, Steven Anderson looking at her and laughing together. Shortly thereafter, Anderson approached Kienholz's sister, who also worked for Dura Supreme, and told her that she should have heard what Stotts had said about "you Jacques girls." The maiden name of Keinholz and her sister was Jacques.

Kienholz then approached Anderson who was talking with Darrel Kruger, another employee. When Keinholz asked Anderson what Stotts had said, Anderson refused to tell her, but Kruger said he would tell her what Anderson had told him. Kruger then told Kienholz that Stotts had said "why don't we get one of the Jacques girls and hook them up by their pussy and swivel them around." The following Monday, Kienholz notified her foreman that she was quitting.

Kienholz filed a claim for unemployment compensation benefits, which was denied. After a hearing, a Department referee affirmed the initial determination, finding that Kienholz was not justified in relying upon Kruger's version of Stotts's comment. Kienholz appealed, and a Commissioner's representative reversed, determining that Stotts's remark constituted sexual harassment and that no corrective action had been taken, despite Kienholz's expression of dissatisfaction to her foreman. Dura Supreme appealed.

### ISSUE

Does the record support the Commissioner's determination that Kienholz terminat-

ed her employment with Dura Supreme because of sexual harassment and is entitled to unemployment compensation benefits?

## ANALYSIS

■ Minn.Stat. § 268.09, subd. 1(1) (1984) provides that an individual is not entitled to receive unemployment compensation benefits if he "voluntarily and without good cause attributable to the employer discontinued his employment with such employer." An employee who voluntarily quits has the burden of proving that he quit with good cause attributable to his employer. *Marz v. Department of Employment Services*, 256 N.W.2d 287 (Minn. 1977). Good cause may be found if the employee quit due to sexual harassment:

A separation shall be for good cause attributable to the employer if it occurs as a consequence of sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other conduct or communication of a sexual nature when: * * * such conduct or communication has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment and the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action.

Minn.Stat. § 268.09, subd. 1(1).

■ The findings of the Commissioner's representative must be reviewed in the light most favorable to the decision, and where there is evidence reasonably tending to sustain them, the findings will not be disturbed by this court. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973) (citation omitted). The scope of review is limited to determining:

[W]hether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable as to represent its will and not its judg-

ment; and whether the decision of the department is without evidence to support it.

*Id.*

Relator argues that our scope of review should be determined by the Administrative Procedure Act, which states:

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1984). The basis for relator's argument is that Minn.Stat. § 268.12, subd. 13(4) (1984) provides:

The court of appeals may, by writ of certiorari to the commissioner, review all questions of law and fact presented by the record in accordance with chapter 14.

Relator claims that because this statute was amended by 1983 Minn. Laws ch. 247, § 114, it supersedes the *Lumpkin* language concerning this court's scope of review.

The above procedure for review, however, is contained within a section of the statute specifically concerning the determination whether an employing unit should be classified as an "employer" for purposes of the unemployment compensation statutes. This provision is entirely separate from the procedures described elsewhere for an appeal of the "[d]etermination of claims for benefits * * *":

Any decision of the commissioner may be reviewed on certiorari by the court of appeals * * *.

Minn.Stat. § 268.10, subd. 8 (1984). This section is the descendant of the statute which was applicable in *Lumpkin*, and contains no mention of chapter 14. It should be noted that this section was also amended in 1983, by 1983 Minn. Laws ch. 247, § 113.

This court has consistently adhered to the scope of review enunciated in *Lumpkin* and its progeny. We decline to deviate from that line of cases here.

Relator also argues that Stotts did not actually make the remark about her and her sister. Relator claims that the testimony of Anderson conflicts with Kienholz's testimony; however, the record actually indicates that Anderson's testimony supports Kienholz's story:

KIENHOLZ: After the comment that [Stotts] made to you did you not go to Kruger and repeat it * * *?

ANDERSON: Yes I did.

KIENHOLZ: *And was it what I said?*

ANDERSON: *Yes.*

KIENHOLZ: And then did you not go up to Shannon [Kienholz's sister] and say * * * you should have heard what Don Stotts said about you Jacques girls?

ANDERSON: He said about *you girls*, I didn't mention any names.

(Emphasis supplied). Relator argues that Anderson's testimony is not exactly the same as Kienholz's. Although the exact words are disputed, the import is the same, and Anderson's testimony corroborates Kienholz's claim that the statement was made.

■ Relator also claims that the Commissioner's representative erred by finding that Kienholz told her foreman the comment was offensive. Relator makes three arguments in support of this claim:

(1) On the same day of the alleged remark about the "Jacques girls," Stotts also made another off-color remark[1] to Kienholz's sister, which resulted in an apology. Relator argues that if Kienholz had told her foreman that she was offended, Stotts would have also apologized to her.

(2) Relator also notes that Kienholz was not generally offended by sexual banter, and in the past had made at least one suggestive remark in fun herself.

(3) Relator correctly points out that the Commissioner's representative made an error by stating:

[T]he foreman testified that he could not recall if the owner had made the comment about the "Jacques girls."

The record does not contain this testimony.

Despite the Commissioner's error, the record supports the Commissioner's determination that Kienholz complained to her foreman and supervisor Duane Malquist. In her statement to the Department, Kienholz indicated: "I told him I was offended and didn't consider it to be a joke." Report of Investigation on Benefit Rights—Claimant's Statement.

■ Upon a notice of sexual harassment, an employer should be given the opportunity to correct the problem. *Kraft v. Independent Delivery Service*, 376 N.W.2d 758, 760 (Minn.Ct.App.1985) (citing *Burtman v. Dealers Discount Supply*, 347 N.W.2d 292 (Minn.Ct.App.1984) *pet. for rev. denied* (Minn. July 26, 1984)). However, Kienholz was given no assurance that the problem would be corrected. Her supervisor told her to take it as a joke. This meets the statutory requirement that an employer "knows or should know of the existence of the harassment and fails to take timely and appropriate action." Minn. Stat. § 268.09, subd. 1(1). *See Porrazzo v. Nabisco Inc.*, 360 N.W.2d 662 (Minn.Ct. App.1985) (employee terminated his employment with good cause when he was given no assurances or expectation of assistance from his employer).

---

1. Stotts was explaining the use of a hot-melt gun and said to Kienholz's sister, "heck, I could hot-melt your ass to the wall."

Relator also claims Kienholz had previously expressed her intention to quit because she was upset that a Christmas party had been put off and that there were no year-end cost-of-living increases. However, this court stated in *Burtman*:

> The law does not require that cause attributable to the employer be the sole reason for termination.

*Burtman*, 347 N.W.2d at 294. The *Burtman* court cited *Hanson v. I.D.S. Properties Management Co.*, 308 Minn. 422, 242 N.W.2d 833 (1976), which stated:

> The disqualification statute does not require that all causal factors in a termination flow from the employer, but that termination be wholly "without good cause attributable to the employer."

*Id.* at 424, 425, 242 N.W.2d at 835 (emphasis and footnote omitted).

### DECISION

The record demonstrates that respondent terminated her employment with relator because of sexual harassment of which her employer was aware. She is entitled to receive unemployment compensation benefits.

Affirmed.