**Gregory M. EYLER, Relator,**

v.

**MINNEAPOLIS STAR & TRIBUNE CO., Commissioner of Jobs and Training, Respondents.**

**No. C5–88–903.**

Court of Appeals of Minnesota.

Aug. 30, 1988.

Gregory M. Eyler, St. Paul, pro se.

Patricia Hirl Longstaff, Minneapolis Star Tribune, Legal Dept., Minneapolis, for respondent Minneapolis Star & Tribune Co.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent Commissioner of Jobs and Training.

Considered and decided by
WOZNIAK, C.J., and PARKER and
SCHUMACHER, JJ., without oral
argument.

## OPINION

PARKER, Judge.

Relator Gregory Eyler seeks review of a determination that several instances of tardiness constituted misconduct disqualifying him from receiving unemployment compensation. We reverse and remand.

## FACTS

Gregory Eyler was employed between May 1986 and November 8, 1987, as a part-time driver for the Minneapolis Star Tribune newspaper. Eyler worked approximately 18 to 24 hours per week on Saturdays and Sundays only.

There is evidence in the record that the Star Tribune had the following progressive disciplinary program for tardiness and unexcused absences:

*In One Running Year*

After One Time Tardy: Verbal Warning
After Two Times Tardy: Warning Letter
After Three Times Tardy: One Week Without Pay
After Four Times Tardy: Dismissal

The policy also stated that a written warning letter would be issued before an employee's dismissal.

Eyler was late for work three times in 1986, and he received a verbal warning, a written warning, and two days' suspension without pay. In 1987 Eyler was late for work on four occasions, but received no warnings or other discipline until he was discharged on November 8, 1987, for tardiness.

After Eyler was discharged, he applied to the Department of Jobs and Training for unemployment compensation. Eyler's claim was initially denied and he appealed to a Department referee, who conducted a hearing. At the hearing Eyler did not dispute the past incidents of tardiness. He testified, however, that Department of Transportation (DOT) regulations allow workers to drive for only 12 hours at a time, but that the Star Tribune required him to work five or six hours beyond that. Eyler testified that in August 1987 his hours were increased so that he was continually working from midnight Friday until 10 p.m. the following evening, or at least until 6 or 7 p.m. Eyler was also scheduled to work Sundays.

On November 7, the last day of his employment, Eyler worked from midnight Friday night until around 8:30 p.m. Saturday evening (approximately 20½ hours) and

was scheduled to come back at 3 a.m. on Sunday (6½ hours later). In fact, however, when his supervisor called him at approximately 3:20 on Sunday, Eyler was just leaving for work.

Stanley Olson, an assistant fleet superintendent for the Star Tribune, admitted that Eyler worked the long hours, but Olson contended it was Eyler's own choice. Olson did not respond to Eyler's allegation that the newspaper was violating DOT regulations.

Following the hearing, the Department referee determined that the employer had failed to prove Eyler was discharged for misconduct. The employer appealed to a Commissioner's representative, who reversed, concluding that Eyler had been discharged for misconduct. The Commissioner's representative did not address Eyler's claims that the Star Tribune required him to work too many hours, in violation of DOT regulations, and did not follow its own disciplinary procedures when it discharged him.

### ISSUES

1. Did the Commissioner's representative err by failing to consider whether the employer breached its own disciplinary procedures?

2. Did the Commissioner's representative err by failing to consider whether the employer was requiring Eyler to work hours beyond the limits prescribed by DOT regulations?

### DISCUSSION

#### I

■ Minn.Stat. § 268.09, subd. 1(b) (Supp.1987), provides that an individual who is discharged for misconduct is disqualified from receiving waiting-week credit and unemployment compensation. "Misconduct" is defined as

conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). The supreme court has also stated that misconduct includes actions which demonstrate a "lack of concern by the employee for her job." *Feia v. St. Cloud State College*, 309 Minn. 564, 565, 244 N.W.2d 635, 636 (1976), *pet. for rev. denied* (Minn. Aug. 25, 1976).

Whether an employee's actions constitute misconduct involves questions of both fact and law. *Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn. 1984). Factual questions require deference to the Commissioner's findings:

The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). With respect to legal questions, on the other hand, an appellate court is "free to exercise its independent judgment." *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn.1981); *Forsberg v. Depth of Field/Fabrics*, 347 N.W.2d 284, 286 (Minn. Ct.App.1984).

In *Hoemberg v. Watco Publishers, Inc.*, 343 N.W.2d 676 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. May 15, 1984), where employee handbook provisions on discipline were not followed, we stated:

The employee handbook and its provisions are enforceable as part of the employment agreement. *Pine River State*

*Bank v. Mettille,* 333 N.W.2d 622 (Minn. 1983). The provisions are more than mere general statements of policy—they are conditions of employment.

*Id.* at 678. The handbook provisions in *Hoemberg* provided for three forms of individual discipline: verbal warning, written warning, and final warning. When a general warning was posted, the *Hoemberg* court held that it did not constitute the final, individual warning required by the handbook. The court concluded:

> While the violation of a work rule may well justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes. * * * Here, there is evidence that the employees had notice of the disciplinary procedures in the handbook and had every right to expect the company would follow those procedures. We hold that the actions of the employees in this case did not rise to the level of misconduct * * *.

*Id.* at 679.

The Star Tribune had a progressive disciplinary program which, in Eyler's case, was not followed. The purpose of stated disciplinary procedures is to improve an employee's conduct and diligence to further the employer's interests. Violation by the employer of its own procedures vitiates the "heedless" aspect of purported misconduct.

## II

■ Throughout the hearing Eyler argued that his tardiness should not be considered misconduct, because the Star Tribune was requiring him to work illegal hours in violation of DOT regulations. This court has stated that an employee's reasonable refusal to comply with an employer's illegal request may not constitute misconduct. *See Christenson v. City of Albert Lea,* 409 N.W.2d 564, 566 (Minn.Ct. App.1987); *see also Burtman v. Dealers Discount Supply,* 347 N.W.2d 292 (Minn. Ct.App.1984), *pet. for rev. denied* (Minn. July 26, 1984) (employer's insistence on repugnant conduct may constitute good cause to quit); *Phipps v. Clark Oil & Refining Corp.,* 408 N.W.2d 569 (Minn. 1987) (employee who was discharged for refusing to pump leaded gas into a vehicle designed for unleaded gas in violation of federal law had cause of action for wrongful discharge). Similarly, if the employer required Eyler to work illegal hours, his actions in coming in late should not be characterized as misconduct; maximum driving hours allowed by DOT regulations bear a direct relationship to public safety. To constitute misconduct under *Tilseth,* an employee must act with utter disregard of an employer's *legitimate* interest, not an unlawful one. It is not, as a matter of law, misconduct to fail or refuse to follow an unlawful order.

## DECISION

The decision of the Commissioner is reversed and the case remanded for determination of whether the Star Tribune followed its own disciplinary procedures prior to discharging Eyler and whether the employer required Eyler to work illegal hours in violation of DOT regulations.

Reversed and remanded.