Charles HAWTHORNE, Relator,

v.

UNIVERSAL STUDIOS, INC.,
Commissioner of Jobs and
Training, Respondents.

No. C6–88–1008.

Court of Appeals of Minnesota.

Dec. 6, 1988.

Paul Mundt, Southern Minnesota Regional Legal Services, Inc., Winona, for Hawthorne.

Steven R. Peloquin, Winona, for Universal Studios, Inc.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ.

### OPINION

HUSPENI, Judge.

Relator Charles Hawthorne, a former employee of respondent Universal Studios, Inc., seeks review of a determination that he did not have good cause attributable to Universal to quit his job. We reverse and remand for more specific findings.

### FACTS

Charles Hawthorne began working for Universal Studios, Inc. ("Universal") in October 1985. His position involved manufacturing stained glass windows.

Hawthorne received a paycheck each Friday for work performed that same week. Prior to February 28, 1986, if he worked over 40 hours during a week, Hawthorne was paid his regular wage for those overtime hours.

In February 1986, Universal's president Larry Conway was informed by his accountant that this practice could not contin-

ue. Accordingly, Conway told Hawthorne to submit a separate request for overtime if he worked over 40 hours during a week. Under this arrangement, Hawthorne would receive his regular paycheck for 40 hours of work, and a separate company check for his overtime hours. His payment for overtime consisted of his regular wage with no payroll deductions taken.

The above arrangement continued until the summer of 1987, when Universal's employees began work on two major projects—the "O'Fallon project" and the "Tom's River project." Hawthorne was assigned to the O'Fallon project.

During the two projects, Universal's employees continued to receive their paychecks each Friday for 40 hours per week; however, they were told to keep track of their overtime hours until the projects were completed. On Monday, September 14, 1987, after the two projects were finished, the employees were paid time-and-a-half for all overtime hours worked during the two projects.

The preceding Saturday, September 12, Hawthorne quit his job with Universal as the result of a dispute with Conway over his overtime compensation. Hawthorne applied for unemployment compensation benefits, and a claims adjudicator with the Department of Jobs and Training ("Department") determined that Hawthorne had good cause to quit due to the overtime dispute.

Universal appealed to a Department referee, who conducted a hearing. At the hearing, the parties disputed the circumstances surrounding Hawthorne's resignation, including the date the O'Fallon project was completed, the manner and time of payment for overtime to which Conway had agreed, and the actual reason Hawthorne quit.

Conway maintained that Hawthorne quit because he was unhappy with the manner of payment for overtime on the O'Fallon project. Conway testified that Hawthorne knew he would be paid time-and-a-half for all of his overtime, but wanted instead to be paid his regular wage with no deductions, as he had been paid in the past.

Hawthorne stated that when he quit, he believed he would be paid for a reduced number of overtime hours. He testified that Conway had told him he could either take time off or be paid for a reduced number of hours at time-and-a-half. Another Universal employee corroborated this testimony. Hawthorne stated that he quit because he didn't believe this method of overtime compensation would be proper.

Elsewhere, however, Hawthorne testified that he did not quit because of what he would be paid, but because of when he would be paid. At one point, he stated that he did not know when he would actually receive his overtime check, and at another point he stated that he quit because Conway told him he would not be paid on Monday, September 14.

On a written statement submitted to the Department, Hawthorne indicated that he quit because his overtime for the O'Fallon project was not paid until after the job was completed.

Following the hearing, the referee concluded that Hawthorne had not established good cause attributable to Universal to quit his job. On appeal, a Commissioner's representative affirmed the referee's findings of fact and conclusions of law.

### ISSUE

Do the Commissioner's findings support his determination that Hawthorne did not have good cause to quit?

### ANALYSIS

Minn.Stat. § 268.09, subd. 1(a) (1986) provides that an individual is disqualified from receiving unemployment compensation benefits if he voluntarily discontinues his employment without "good cause attributable to the employer." An employee who voluntarily quits bears the burden of proving that he did so with good cause attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978) (citing *Marz v. Department of Employment Services*, 256 N.W.2d 287 (Minn.1977)).

On appeal, the Commissioner's findings of fact must be affirmed if there is evidence sufficient to sustain them, viewing the evidence in the light most favorable to the findings. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983). Nevertheless, we will not defer to the Commissioner's findings where there is no evidence to support them. *See Holton v. Gnan Trucking,* 379 N.W.2d 571 (Minn.Ct. App.1985).

The Commissioner's representative indicated that he was adopting the referee's findings of fact in determining that Hawthorne did not have good cause to quit. The referee found:

> On September 11, 1987 * * * [t]he employer told the claimant that it would no longer pay overtime as it had been doing but would now pay overtime at the rate of one and one-half times the straight time rate and that payment would be made with the regular payroll check with standard deductions from gross earnings. The change was made in order to comply with legal requirements concerning overtime pay; requirements only *recently* learned by the employer.

(Emphasis added.)

There is no evidence in the record to support the above finding that legal requirements concerning overtime pay had only "recently" been learned by Universal. Rather, Hawthorne and Conway both indicated that the method of payment for Hawthorne's overtime had been changed in February 1986, when Universal's accountant told Conway he could not continue to pay straight wages for overtime hours worked.

The referee found that Hawthorne quit his job because he wanted to be paid straight time without payroll deductions for his overtime hours, but Universal was unwilling to continue this practice. Although the Commissioner's representative stated that he was adopting the referee's findings, the representative also stated:

> [T]he Referee concluded that the claimant terminated his employment because he was unhappy with the methods proposed by the employer to pay his overtime hours. *If we found that this was*

*indeed the motivating reason for the claimant's separation,* we would agree with the Referee's conclusion that insofar as neither of the employer's proposals was in contravention of the law or the employment agreement, the claimant failed to establish good cause attributable to the employer for his separation on that ground. Further, *if we concluded that the basis for the claimant's separation* was his concern as to when he would be paid for the overtime worked, we would find this ground too, to be insufficient to establish the requisite good cause. * * *

(Emphasis added.)

■ The above discussion indicates that the Commissioner's representative did not in fact adopt the referee's findings regarding the reason Hawthorne quit his job. Rather, the Commissioner discussed two reasons why Hawthorne might have quit his job, without specifically adopting one of those reasons. We are unable to determine from the Commissioner's decision whether he believed Hawthorne quit because of Conway's proposed method of payment for overtime, because of the time of payment for overtime, or both reasons.

Prior cases have recognized that there may be more than one cause for an employee's separation from employment. *See, e.g., Hanson v. I.D.S. Properties Management Co.,* 308 Minn. 422, 242 N.W.2d 833 (1976) (all causal factors in a termination need not flow from the employer, but the termination must be wholly 'without good cause attributable to the employer'. *Id.* at 424–25, 242 N.W.2d at 835.) *See also Burtman v. Dealers Discount Supply,* 347 N.W.2d 292 (Minn.Ct.App.1984) (employee's concern with the employer's repugnant sales tactics was "no less a significant factor in his separation" than the employer's denial of a request for time off). *Id.* at 293.

■ The Commissioner's representative concluded that if Hawthorne quit because he was concerned about when he would be paid for overtime, that basis would be insufficient to establish good cause to quit. The question whether an employee had

good cause attributable to the employer to quit is one of law, which may be independently determined on appeal. *Forsberg v. Depth of Fields/Fabrics,* 347 N.W.2d 284, 286 (Minn.Ct.App.1984); *Talberg v. Commissioner of Economic Security,* 370 N.W.2d 686, 688 (Minn.Ct.App.1985). We cannot agree with the Commissioner's representative's conclusion regarding Hawthorne's concern about when overtime would be paid.

Minn.Stat. § 177.25 (1986) governs the payment of overtime compensation:

No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1½ times the regular rate at which the employee is employed. The state of Minnesota or a political subdivision may grant time off at the rate of 1½ hours for each hour worked in excess of 48 hours in a week in lieu of monetary compensation. An employer does not violate the overtime pay provisions of this section by employing any employees for a workweek in excess of 48 hours without paying the compensation for overtime employment prescribed (1) if the employee is employed under an agreement meeting the requirement of section 7(b)(2) of the Fair Labor Standards Act of 1938, as amended * * *.

Minn.Stat. § 177.28 (1986) authorizes the commissioner of labor and industry to adopt rules implementing the minimum wage and overtime statutes, Minn.Stat. § 177.21–177.35. Minn.R. 5200.0150 (1987) states: "Overtime pay shall be paid no later than the payday immediately following the regular payday for the pay period in which it was earned."

Neither the referee nor the Commissioner's representative made findings concerning the application of the overtime laws. Neither made findings as to when Hawthorne's overtime pay was earned. The record suggests that overtime hours were accumulated over several weeks before the O'Fallon and Tom's River projects were completed. Despite the fact that the employees received their regular paychecks each week during that time, they did not receive their overtime until the projects were completed.

Illegal conduct by an employer may constitute good cause for an employee to quit. In *Kahnke Bros., Inc. v. Darnall,* 346 N.W.2d 194 (Minn.Ct.App.1984), we adopted the following language by the Commissioner:

An employer who violates a state law in its treatment of its employees is per se guilty of employer misconduct, and such breach of the employer-employee relationship furnishes the employee with the requisite good cause for quitting.

*Id.* at 196.

We therefore remand for specific findings whether Universal's delay in paying overtime during the two projects violated state overtime laws, and whether the delay in payment was a reason for Hawthorne's separation from employment.

We wish to stress that our decision to remand is not based upon Universal's method of payment for overtime prior to the O'Fallon project or its decision to change the method of payment to comply with the law. Universal should not be penalized for implementing the policy of paying time-and-a-half for overtime rather than continuing the inappropriate method of paying straight time with no deductions for overtime work. Our sole concern on remand is to assure that the Commissioner addresses the issue of whether the timeliness of overtime payment was a contributing cause in Hawthorne's decision to leave employment with Universal.

## DECISION

The Commissioner's findings are insufficient regarding the reason for Hawthorne's separation and whether any illegal actions by Universal led to that separation.

REVERSED AND REMANDED.

SCHUMACHER, Judge (dissenting).

I respectfully dissent from the majority and recommend that the decision of the Commissioner of Jobs and Training (Com-

missioner) be affirmed. The claimant did not have good cause attributable to his employer for leaving his job and therefore should be disqualified from receiving unemployment compensation benefits pursuant to Minn. § 268.09, subd. 1(a) (Supp.1987).

An appellate court's scope of review with respect to the decision of the Commissioner is limited. In *Reserve Mining Co., Babbit Division v. Gorecki,* 316 N.W.2d 547 (Minn.1982), the supreme court set forth the following standards:

> The narrow standard of review upon appeals from decisions of the commissioner is that the findings are to be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*Id.* at 549.

Assessing the relative credibility of the testimony is a function assigned by law to the hearing examiner whose decision will not be disturbed on review unless clearly erroneous. *Jeane Thorne Temporary Service, Inc. v. Elliott,* 351 N.W.2d 393. 395 (Minn.App.1984).

While the employer has the burden of proving that the employee has quit voluntarily and, therefore, is not eligible to receive unemployment compensation benefits, the employee has the burden of proving that the resignation was for good cause attributable to the employer. *Marz v. Department of Employment Services,* 256 N.W.2d 287, 289 (Minn.1977). Hawthorne admitted that he quit voluntarily. The referee's findings state that Hawthorne quit after the employer announced overtime would no longer be paid on a straight time basis on a separate check without payroll deductions but would be paid on a time and one-half straight time basis with standard payroll deductions. The referee points out in his findings that the record fails to show this change in method of overtime payment was a violation of any duty employer owed to employee.

The Commissioner stated in his decision that "the findings of fact as found by the referee are in accordance with the evidence and are therefore adopted as the findings of fact of the Commissioner." In the memorandum accompanying the decision, the Commissioner quotes the transcript from the appeal hearing to show that Hawthorne failed to establish his burden of proof under *Marz:*

> Q. So it wasn't a matter of you not being paid for your overtime, it was a matter of when you were going to be paid for the overtime?
>
> A. Yes.
>
> Q. Okay and you were confident that in fact you were going to be paid for your overtime, you just didn't want to be paid then on Friday, you wanted to be paid on Monday?
>
> A. I was confident that I would eventually get the money, but I was also afraid that it was, it would be possible that it would be put off even another week, I had no way of knowing at that point in time.
>
> Q. Okay, so your contention was you were just, you were not sure when you were going to be paid for the overtime?
>
> A. That's right.

The Commissioner further found and stated in the memorandum:

> After considering the evidence of record and assessing the relative credibility of the parties, the referee concluded that the claimant terminated his employment because he wasn't happy with the methods proposed by the employer to pay his overtime. * * *
>
> We note, finally, that we have some genuine concerns regarding the claimant's credibility and sincerity in his pursuit of this claim. It appears from the claimant's own testimony that he was not even certain what he was thinking about when he terminated his employment. * * *
>
> This being the case, it is extremely difficult for us to credit any of the claimant's testimony regarding the basis for his termination. The claimant's contradictory testimony stands in distinct contrast to the employer's testimony, which was consistent and lucid regarding the conversations and events leading to the

claimant's decision to terminate his employment.

The Commissioner found that Hawthorne failed to meet his burden of proof and therefore failed to establish that his resignation was for a good cause attributable to his employer.

Based on the Commissioner's findings and in view of the limited scope of review of this court, I would conclude that the Commissioner's decision should be affirmed.