Peter PARNELL, Relator,

v.

RIVER BEND CARRIERS, INC., Commissioner of Jobs and Training, Respondents.

No. C9-91-2292.

Court of Appeals of Minnesota.

May 26, 1992.

Robert C. Youngerman, Southern Minnesota Regional Legal Services, Inc., Winona, for Peter Parnell.

Michael D. Bernatz, Libera, Libera & Bernatz, Winona, for River Bend Carriers, Inc.

\* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI,

Lee B. Nelson, St. Paul, for Commissioner of Jobs and Training.

Considered and decided by CRIPPEN, P.J., and SCHUMACHER and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.\*

A commissioner's representative denied relator's claim for unemployment benefits, concluding relator did not have good cause to voluntarily quit his job with respondent River Bend Carriers. Relator obtained a writ of certiorari, arguing he had good cause to quit as a result of River Bend's requirement that he violate federal trucking laws. We agree and reverse.

## FACTS

Relator Peter Parnell was a truck driver for respondent River Bend Carriers between 1985 and November 1990. River Bend was a small interstate trucking company, with three full-time drivers and one relief driver. River Bend's president and chief executive officer, Paul Barrett, contracted for business and dispatched loads.

During the course of Parnell's employment with River Bend, he frequently drove more hours than were permitted under federal highway laws. As a result, Parnell was required to submit inaccurate driver logs. Both Parnell and Barrett were aware of these violations. It is disputed whether Parnell ever complained to Barrett about his hours of work.

Parnell resigned from River Bend on November 22, 1990 and submitted an application for unemployment compensation benefits to the Department of Jobs and Training. On his application, Parnell stated that he had resigned because of the long hours.

Barrett responded in a letter to the Department, claiming that Parnell had told him he was quitting for personal reasons. Regarding Parnell's claim that he had been required to work too many hours, Barrett stated that it was Parnell's responsibility to

§ 2.

keep track of his own hours. According to Barrett, Parnell had never complained to him that he was "out of hours."

Based on the above evidence, a Department adjudicator denied Parnell's claim for unemployment benefits, determining that he had quit his job with River Bend for personal reasons. Parnell appealed the adjudicator's determination to a Department referee, who conducted a hearing.

Parnell testified that during a normal week, he would leave on a Friday for the Pacific Northwest and return by Thursday the following week. He testified that his hours of duty exceeded the amount allowed by federal safety regulations and that this "was a consistent situation." When asked whether or not he had expressed concern to Barrett, or whether or not Barrett had expected him to drive so many hours, Parnell replied that his lengthy hours of work had become a joke, and that he had told Barrett that he was not sure how much longer he could continue working under those conditions.

Barrett testified that Parnell never complained about his work schedule, or told Barrett that he was "out of hours." Barrett testified that even when Parnell quit, he did not complain about his hours.

Barrett admitted that one of Parnell's coworkers had filed a complaint with the Department of Transportation, and that River Bend had been inspected to determine compliance with federal transportation laws. Barrett also admitted that the inspection had revealed some violations, and that as a consequence, his safety rating had been reduced from "satisfactory" to "conditional." A copy of the inspector's report was introduced into the record. Among other violations, the report reveals two violations of "Requiring or Permitting Driver to Drive More Than 10 Hours," 61 violations of "Failing to Require Driver to Prepare Record of Duty Status in Form and Manner Prescribed," and seven violations of "Requiring or Permitting Driver to make False Entries Upon a Record of Duty Status."

Following the hearing, the referee issued findings of fact and a decision affirming the denial of benefits. Although the referee found that Barrett had been aware that Parnell was driving in violation of federal regulations, the referee concluded that Parnell did not have good cause to quit, since he had never actually complained to Barrett about the unsatisfactory working conditions.

Parnell appealed the referee's decision to a commissioner's representative who affirmed the referee's findings and decision.

### ISSUE

Did Parnell have good cause attributable to River Bend to quit his job?

### ANALYSIS

An individual is disqualified from receiving unemployment benefits if the individual has voluntarily quit a job without good cause attributable to the employer. Minn. Stat. § 268.09, subd. 1(a) (1990). It is undisputed that Parnell voluntarily quit his job with River Bend. The issue is whether he had "good cause" to do so.

An employee has the burden of proving that he quit with good cause attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). Whether an employee had good cause to quit is a question of law. *See Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662, 664 (Minn.App.1985). This court need not defer to the commissioner's legal determinations. *Geo. A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn. 1988).

An employee, prior to quitting, ordinarily must provide notice of his objections to repugnant conduct encouraged by his employer. *Burtman v. Dealers Discount Supply*, 347 N.W.2d 292, 294 (Minn.App. 1984), *pet. for rev. denied* (Minn. July 26, 1984). The *Burtman* court explained:

> The commissioner's representative's finding that Burtman was instructed to engage in conduct he considered illegal and immoral is supported by the record. The employer's insistence upon sales tactics repugnant to Burtman, and to this

court, would be good cause attributable to the employer if Burtman gave sufficient notice of his objections to his employer.

An employee who does not report offensive work conditions to his employer before quitting forecloses a finding of good cause attributable to the employer. *Larson v. Department of Economic Sec.*, 281 N.W.2d 667 (Minn.1979).

*Id.* at 294. Here, the commissioner's representative specifically found that Parnell did not complain to Barrett about the trucking law violations. Accordingly, the commissioner's representative concluded Parnell did not have good cause to quit. We disagree.

In an unpublished opinion, we recently held that another of River Bend's employees had good cause to quit as a result of River Bend's trucking violations, even though the employee failed to complain prior to quitting. *See Steies v. River Bend Carriers*, No. C3–91–2000, 1992 WL 83304 (Minn.App. Apr. 28, 1992). We explained in *Steies:*

> We conclude that Steies was not required to notify Barrett of his objections to the illegal conduct prior to quitting. Unlike other cases involving an employee's objections to workplace conduct affecting that employee only, here the

trucking violations affected the safety of other individuals on the public highways. *Id.* at 3 (footnote omitted). We reaffirm the above conclusion, and specifically hold that when an employer violates federal trucking laws related to the public safety, a truck driver thereupon has good cause per se to quit at any time as a result of the violation.[1] *Cf. Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 571 (Minn. 1987) (employee can bring wrongful discharge action if discharged for refusing to participate in believed illegal activity). The overriding public policy involved in protecting the public on our highways precludes application of *Larson* and *Burtman*, both of which are distinguishable on their facts.

### DECISION

Relator had good cause to quit his job as a result of respondent's violation of federal trucking laws affecting the public safety even though he failed to complain prior to resigning.

Reversed.

---

1. Whether the employee has acquiesced in the violations before quitting, in an attempt to retain his job, should not preclude a determination of good cause to quit.