Timothy **GRUNOW**, Relator,

v.

**WALSER AUTOMOTIVE GROUP LLC**, Respondent,

Department of Employment and Economic Development, Respondent.

No. A09–1338.

Court of Appeals of Minnesota.

March 23, 2010.

Timothy A. Grunow, Dresser, WI, pro se relator.

Walser Automotive Group LLC, Bloomington, MN, for respondent.

Lee B. Nelson, Amy R. Lawler, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent-department.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

CONNOLLY, Judge.

Relator appeals his determination of ineligibility for unemployment benefits, arguing that he quit his job in order to accept one with substantially better terms and conditions of employment. Relator asserts that the new position would not have required him to work weekends; would provide overtime pay for weeks in which he worked over 40 hours; would allow him to elect out-of-group healthcare coverage; would permit him to carpool to work with his wife; and would allow him to spend more time with his family. Without diminishing relator's reasons for attempting to change employment, we affirm the determination of ineligibility as an objective comparison of the positions reflects that the new position paid less money and required him to pay more for family health insurance coverage.

## FACTS

Relator Timothy Grunow was employed as a parts manager for respondent Walser Automotive Group LLC (Walser) in Roseville. Relator began working at Walser in November 2006. Relator was paid $22.70 per hour; the job was a union position and relator paid $223.90 a month for family health insurance coverage. Relator worked 45 hours per week, generally Monday through Friday, but also occasionally worked on Saturdays.

In late March 2009, an old friend of relator advised him that a parts manager position was open at Denny Hecker's Cadillac Pontiac GMC, Inc. (Hecker's) in Stillwater. The Hecker's dealership was approximately 15 miles closer [1] to relator's

---

**1.** There appears to be some discrepancy in the record regarding how many miles relator would shave off of his commute by accepting the Hecker's position. Relator initially testified that he would "save 100 miles a day," a figure he reiterated in his request for reconsideration. However, when asked by the ULJ at the hearing, relator agreed that the difference in mileage was approximately 30 to 40 miles. The differing figures can perhaps be

home in Dresser, Wisconsin, allowing relator to carpool with his wife to work. The Hecker's position paid $21.50 per hour, was non-union, and provided family health insurance coverage for $450 a month. Relator accepted the position on March 20, and notified Walser on March 23. Relator's last day at Walser was April 3. Prior to his departure, relator attempted to get his position back at Walser, but was told that it had been filled. When relator reported to work at Hecker's on April 6, the dealership was closed.

Relator was determined to be ineligible for unemployment benefits and appealed the determination to an unemployment-law judge (ULJ). An evidentiary hearing was held. At issue was whether relator's new position at Hecker's provided substantially better terms and conditions of employment than the one he quit at Walser. Relator testified that he would save between $100 and $150 in car-related expenses per week with the Hecker's position. The ULJ concluded that, even considering the cost savings with a shorter commute and carpooling, the Hecker's position did not have substantially better terms and conditions because the evidence showed that the Hecker's position paid "$0.75 to $1.20 an hour less" and relator would have to pay approximately $220 more per month for family health insurance coverage.

Relator sought reconsideration of the ULJ's determination. Relator again emphasized the car-related expense savings with the Hecker's position. Relator also stated that he did not intend to purchase family health insurance coverage through Hecker's, as he had been covered under his wife's policy for the past ten years.

Additionally, relator stated that the Hecker's position offered significantly better terms of employment as Hecker's had promised him he would not have to regularly work on Saturdays, thus giving him more time with his two sons, and that he would be paid time and a half for hours worked in excess of 40 hours each week.

The ULJ affirmed the determination of ineligibility. While the ULJ "found [relator's] contentions interesting they were not persuasive." The ULJ reasoned that "[t]he Court has ruled in the past that the statute contemplates a comparison of terms and conditions of the positions in question, and not a comparison of which position is more suitable to the personal needs of an individual employee." The ULJ concluded that "[t]he reasons presented by [relator] in his reconsideration request appear [to] be better for him personally, not that one company's employment terms were substantially better than the other." This certiorari appeal follows.

## ISSUE

**Did the ULJ err in concluding that relator did not quit his employment in order to accept another position with substantially better terms and conditions?**

## ANALYSIS

■ As a question of law, this court reviews de novo whether an applicant is properly disqualified from unemployment benefits. *Hayes v. K–Mart Corp.*, 665 N.W.2d 550, 552 (Minn.App.2003), *review denied* (Minn. Sept. 24, 2003). When reviewing the ULJ's determination of ineligibility, this court may affirm the decision,

---

explained by the lack of clarity as to whether the mileage saved was measured roundtrip or one-way and the difference saved on account of relator's carpooling with his wife. In any event, because the length of the commute is a

subjective component of the Hecker's position and not part of the objective analysis as to whether the Hecker's position was substantially better than the Walser position, these discrepancies are irrelevant.

remand it for further proceedings, or reverse or modify it if the relator's substantial rights have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence in view of the record as a whole. Minn.Stat. § 268.105, subd. 7(d) (2008) (articulating reasons for remand, modification, and reversal). "This court views the ULJ's factual findings in the light most favorable to the decision" and will not disturb them when they are substantially sustained by the evidence. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn.App.2008), *review denied* (Minn. Oct. 1, 2008).

■ Generally, an applicant who quits employment is ineligible for unemployment benefits. Minn.Stat. § 268.095, subd. 1 (2008). However, an exception exists when the applicant quit in order to "accept other covered employment that provided substantially better terms and conditions of employment, but the applicant did not work long enough at the second employment to have sufficient subsequent earnings to satisfy the period of ineligibility that would otherwise be imposed." [2] *Id.*, subd. 1(2).

We note that, while we have addressed this question in several unpublished opinions, there does not appear to be a published decision on what constitutes substantially better terms and conditions of employment. We take this opportunity to address this question in a published opinion. *See* Minn.Stat. § 480A.08, subd. 3(c) (2008) ("Unpublished opinions of the Court of Appeals are not precedential."). Previously, we have concluded that terms and conditions of employment are not limited to financial benefits, such as wages, but also contemplate benefits such as advancement opportunities, union representation, and group health, life, and disability insurance coverage. *McCoy v. County of Ramsey*, No. A06–1153, 2007 WL 1248136, at *2 (Minn.App. May 1, 2007), *review denied* (Minn. June 27, 2007). The new position must not simply be "better," but must be "substantially better." *Welshons v. Superior Truck Auto & Marine Inc.*, No. A07–0759, 2008 WL 2104454, at *2 (Minn.App. May 20, 2008) (concluding more modern working conditions and a shorter commute were not substantially better terms when relator would have been performing the same work, with the same general hours, in the same general work environment); *see also Yukich v. Furin & Shea Welding & Fabricating*, No. A05–558, 2006 WL 9583, at *2 (Minn.App. Jan.3, 2006) (holding 3.6% pay increase between $14.00 and $14.50 per hour was not substantially better as a matter of law). Whether the new employment is substantially better is based on an objective comparison of the positions' terms and conditions, and "not a comparison of which position is more suitable to the personal needs of an individual employee." *McCoy*, 2007 WL 1248136, at *2.

On appeal, relator (1) maintains he would not have elected to participate in Hecker's group healthcare coverage; (2) reiterates the car-related expense savings from a shorter commute and the ability to carpool; and (3) repeats the availability of overtime pay at Hecker's should he be required to work on the weekend and the greater amount of time that he could spend with his family. Relator asks "[w]hy did the [ULJ] not even ask me why I took the new job unless I regarded it as having better terms and conditions?" While we in no way wish to diminish the values inherent in relator's reasons for changing jobs, relator's statement reflects the very subjective, "personal" nature of

---

**2.** It is undisputed that the Hecker's position would have qualified as covered employment.

the benefits he deemed to accompany the Hecker's position when compared to his position with Walser. In fact, when asked by the ULJ about the medical and dental benefits associated with the Hecker's position, relator testified that he did not know and "didn't have a chance to get into that," explaining that he was already covered under his wife's medical policy.

In his request for reconsideration, relator appeared to suggest that he was not paid appropriately at Walser:

> [Walser] classified my position as Parts Manager and therefore treated me as ... exempt from the hourly wage laws, so I did not receive overtime pay even though I regularly worked more than 40 hours per week. However, as a union member employee who reported regularly to the Parts Director, I often wondered why I did not receive time and a half for my hours in excess of 40 each week. I did not question this arrangement because I did not want to come across as a complainer or lose my job.

At the hearing, however, a Walser representative stated that relator worked 45 hours per week, "Monday through Friday, most of the time, but they did have a rotating Saturday every third Saturday, and they would either take a day off during the week if they had to work the Saturday." When asked if he agreed with the Walser representative regarding the hours, relator said "pretty much." Relator stated he would work six days a week when Walser was "short-handed," and that the last month he was at Walser, this happened "pretty often," "about almost every other week." Later in the hearing, the ULJ asked relator if this was why he quit, to which relator responded,

> No, no, that, that had really no bearing on it.... It was tough and I was putting in more hours than I was getting paid, but that wasn't the issue. The issue was

> I had a chance to get closer to my house, without Saturdays, with a steady-hour job to where I could, I could be with my family more....

The record does not contain any findings on relator's working hours. We have previously concluded that an employer's delay in paying overtime in violation of state law constitutes good cause for an employee to quit when that delay in payment was the reason the employee left. *Hawthorne v. Universal Studios, Inc.*, 432 N.W.2d 759, 761–62 (Minn.App.1988). However, that does not appear to be the situation here. Additionally, while a person may, understandably, choose to accept a position that would allow him or her to spend more time with family, this is not an objective measure of whether the new position has substantially better terms and conditions. *McCoy*, 2007 WL 1248136, at *2 (concluding that, although circumstances of nanny position—including the ability to spend more time with her children—were more suited to applicant's personal needs, nanny position did not have substantially better terms and conditions of employment).

## DECISION

The ULJ's findings reflect that, while relator would have saved money with a shorter commute and the ability to carpool, the new position paid approximately $1 per hour less and relator would have to pay about $220 more per month for family health insurance coverage. Because the ULJ's findings are substantially supported by the record and because the ULJ correctly determined that the length of relator's commute and the decision whether to participate in the employer's group healthcare coverage were subjective aspects of employment, we affirm the determination of ineligibility as the new position did not offer substantially better terms and condi-

tions of employment when objectively compared to relator's previous position.

**Affirmed.**