*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0051

Nyqueela P. James,
Relator,

vs.

Minnesota Department of Transportation,
Respondent,

Department of Employment
and Economic Development,
Respondent.

**Filed September 8, 2015**
**Affirmed**
**Hudson, Judge**

Department of Employment and Economic Development
File No. 32980858-3

Peter B. Knapp, Jennifer A. Carlson (certified student attorney), William Mitchell Law Clinic, St. Paul, Minnesota (for relator)

Minnesota Department of Transportation, St. Paul, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Hudson, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

In this certiorari appeal, relator challenges the decision of an unemployment-law judge (ULJ) that she was ineligible for unemployment benefits because she was not available for or actively seeking suitable employment. We affirm.

**FACTS**

Relator Nyqueela P. James worked for respondent Minnesota Department of Transportation (MnDOT) as an account clerk performing data entry from March 2012 until October 2014, when she quit her employment. James worked 40-hour weeks on a fixed schedule from 7:00 a.m. until 3:30 p.m.

James lost her daycare arrangement for her 20-month-old child in fall 2014, when her previous daycare center became unavailable to her, and other persons who had been caring for her child became unable to do so on a full-time basis. James informed her supervisor that she was having problems obtaining daycare and asked if she could adjust her work schedule to come in later, work part-time, or telecommute. The supervisor denied her request. Because James was not offered accommodation for her childcare issue and was unable to obtain affordable daycare, she gave notice that she was quitting employment. She later discovered that a neighbor would be available to care for her child but could only take the child after 9:00 or 10:00 a.m. each day.

James established an unemployment-benefits account with respondent Minnesota Department of Employment and Economic Development (DEED) but was determined ineligible for benefits. At an appeal hearing before a ULJ, she testified that she was

looking for work in an afternoon shift, from 3:00 to 11:00 p.m. She stated that she had spent several hours per day looking for work, had applied for about seven to ten jobs, and had received some job offers through a temporary agency, but was unable to accept them because they required availability in earlier morning hours when she lacks childcare.

The ULJ issued a decision finding that, because James quit due to the loss of her childcare, requested accommodation from her employer, and was denied accommodation, she would be eligible for unemployment benefits if all other requirements were met. *See* Minn. Stat. § 268.095, subd. 1(8) (2014) (stating exception to ineligibility for benefits due to voluntary quit when an applicant loses childcare and meets certain requirements). But the ULJ determined that James was not entitled to benefits because she did not meet the additional eligibility requirement that she be available for, and actively seeking, suitable employment. *See* 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 8, at 1690 (amending Minn. Stat. § 268.085, subd. 1(4)-(5) (2014)).

On reconsideration, the ULJ affirmed the decision. The ULJ found that James was not available for suitable employment because she was available to start work only after 9:00 or 10:00 a.m., and suitable employment for her included earlier start times. The ULJ also found that James was not actively seeking suitable employment because she had been looking exclusively for second-shift work, and suitable employment included earlier shifts. The ULJ noted that, if James believed that she was currently available for and

3

seeking suitable employment, she should contact DEED and provide evidence to support her claim.[1] This certiorari appeal follows.

## D E C I S I O N

When reviewing a ULJ's decision, this court may affirm, remand the case for further proceedings, or reverse and modify the decision if the substantial rights of the relator have been prejudiced because the decision is unsupported by substantial evidence in view of the record as a whole or affected by an error of law. 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 12, at 1693 (amending Minn. Stat. § 268.105, subd. 7(d) (2014)). We review the ULJ's factual findings in the light most favorable to the decision and will not disturb those findings if the evidence substantially sustains them. *Grunow v. Walser Auto. Grp. LLC*, 779 N.W.2d 577, 580 (Minn. App. 2010). But we review de novo the legal conclusion that an applicant is ineligible to receive unemployment benefits. *Id*. at 579.

To be eligible for unemployment benefits, an applicant must be "available for" and "actively seeking" "suitable employment." 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 8, at 1690 (amending Minn. Stat. § 268.085, subd. 1(4)-(5) (2014)). A person is considered available for suitable employment if that person is "ready, willing, and able to accept suitable employment." Minn. Stat. § 268.085, subd. 15(a) (2014). The issues of

---

[1] At oral argument, respondent's attorney indicated that James was currently receiving unemployment benefits. Because this information is not part of the record before us, we do not consider it. *See Appelhof v. Comm'r of Jobs & Training,* 450 N.W.2d 589, 591 (Minn. App. 1990) (stating that on certiorari review of an unemployment-benefits hearing, "evidence which was not received below may not be reviewed as part of the record on appeal").

4

whether an applicant is available for, and actively seeking, suitable employment are factual determinations. *Goodman v. Minn. Dep't of Emp't Servs.*, 312 Minn. 551, 553, 255 N.W.2d 222, 233 (1977) (availability); *McNeilly v. Dep't of Emp't & Econ. Dev.*, 778 N.W.2d 707, 711-12 (Minn. App. 2010) (actively seeking).

James argues that the ULJ erred by not making express findings as to what constitutes "suitable employment" for her and clearly erred by finding that she was not available for suitable employment. Suitable employment is defined as "employment in the applicant's labor market area that is reasonably related to the applicant's qualifications"; it includes employment on a second, third, rotating, or split shift if that arrangement of hours is customary in the occupation in the labor market area. Minn. Stat. § 268.035, subd. 23a(a), (f) (2014). James maintains that the ULJ assumed that suitable employment for her would include only jobs similar to her data-entry job at MnDOT and only addressed the issue of suitable employment by finding that she was not available to work before 9:00 or 10:00 a.m.

But the ULJ's failure to make express findings on what would constitute suitable employment for James does not affect the determination that she was ineligible for benefits because she indicated that she was only looking for jobs that would require a late start or an evening shift. "An applicant may restrict availability to suitable employment, but there must be no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment." Minn. Stat. § 268.085, subd. 15(a).

5

An applicant who has restrictions on the hours of the day or days of the week that the applicant can or will work, that are not normal for the applicant's usual occupation or other suitable employment, is not "available for suitable employment." An applicant must be available for daytime employment, if suitable employment is performed during the daytime, even though the applicant previously worked the night shift.

*Id.*, subd. 15(d) (2014). The record shows that James had self-imposed restrictions on her working hours, based on the hours she had available childcare. Even if other jobs in addition to data entry were considered suitable employment, in order to be considered available for those jobs, she would be required to be able to work without restricted hours on a day shift. *See id.* James argues that the record shows that she was seeking employment on a day shift because she turned down job offers based on their 8:00 a.m. start time. But her application for those jobs does not mean that she was available for suitable employment when she would not accept them, based on her childcare availability. Substantial evidence supports the ULJ's finding that James was not available for suitable employment.

James also challenges the ULJ's finding that she was not actively seeking suitable employment. She points out that whether an applicant is actively seeking suitable employment depends on the circumstances of each case, *McNeilly*, 778 N.W.2d at 711-12, and she maintains that the ULJ ignored evidence of her efforts to apply for jobs, finding only that she searched exclusively for second-shift work. But although James may have diligently sought employment within the framework of her childcare availability, the statute requires that an applicant's active search must be for suitable

6

employment. *See* 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 8, at 1690 (amending Minn. Stat. § 268.085, subd. 1(5) (2014)). And in James's case, suitable employment was not limited to second-shift jobs but also included earlier shifts. The ULJ did not clearly err by finding that James had not been actively seeking suitable employment.

James finally argues that because the Minnesota legislature created an exception to the "voluntary quit" provision to allow persons who have lost childcare to become eligible for unemployment insurance, *see* Minn. Stat. § 268.095, subd. 1(8), this court should also read the "available for suitable employment" provision to take account of a person's inability to maintain a work schedule due to loss of childcare. *See* 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 8, at 1690 (amending Minn. Stat. § 268.085, subd. 1(4) (2014)). We review issues of statutory interpretation de novo. *Carlson v. Dep't of Emp't & Econ. Dev.*, 747 N.W.2d 367, 371 (Minn. App. 2008).

If the legislature's intent is discernable from a statute's plain and unambiguous language, this court applies its plain meaning. *Id.* In examining a statute, we may read the language of related statutes together. *Id.* at 372. If a statute is ambiguous, this court must ascertain legislative intent, considering the law's purpose, legislative history, and existing legislative or administrative interpretations. Minn. Stat. § 645.16 (2014); *Carlson*, 747 N.W.2d at 372.

James argues that her proposed interpretation would further the unemployment-compensation law's policy of assisting those who are unemployed through no fault of their own. *See* Minn. Stat. § 268.03, subd. 1 (2014) (stating that policy); *see also* Minn. Stat. § 268.031, subd. 2 (2014) (stating that the unemployment-law chapter is remedial in

7

nature). But although quitting employment due to loss of childcare does not initially render an applicant ineligible for benefits, the relevant statute plainly provides that the loss-of-childcare "exception raises an issue of the applicant's being available for suitable employment under section 268.085, subdivision 1, that the commissioner must determine." Minn. Stat. § 268.095, subd. 1(8). Thus, the commissioner must render a separate decision on whether an applicant who has quit because of a loss of childcare is available for suitable employment. *Id.*; *see also McNeilly*, 778 N.W.2d at 711 (holding that, although a seasonal employee was not deemed ineligible for benefits based on an off-season layoff due to lack of work, he "was nevertheless required to comply with the requirements outlined in section 268.085, subdivision 1, in order to remain eligible" for benefits).

There is no equitable or common-law entitlement to unemployment benefits. Minn. Stat. § 268.069, subd. 3 (2014). Even though James was not deemed ineligible for benefits when she quit due to her inability to obtain childcare, in order to remain eligible for those benefits, she was still required to be available for suitable employment. The ULJ did not err by finding that she was not available for suitable employment and thus determining that she was ineligible for unemployment benefits.

**Affirmed.**


Dated: _____          _____
                                    Judge Natalie E. Hudson

8